JOHN W. HOPKINS ET AL. v. SAMUEL R. SANFORD ET AL.    41  243
                                                             147  706

*Case not remitted, on reversal, to referee—Contract to furnish logs for sawing—Damages for failure—Measurement of logs.*

A stipulation for a reference is not operative after judgment, and does not return a case, on reversal, to the referee; the case is simply remitted to the court.

Oral evidence is sometimes admissible to show special circumstances known to the parties to a contract at the time it was made, in order to lay a foundation for damages.

Damages were allowed the owners of a saw-mill for the loss of profits resulting from a contractor's failure to furnish the required quantity of logs during the season. *Held* proper, however, to exclude testimony that when the contract was made both parties knew that the mill-owners depended on these logs to keep their mill running, since damages for the mill's lying idle could not be recovered unless some resulting injury was claimed besides the loss of running profits.

In an action on a contract to furnish logs through a boom company, the number of logs delivered by the company cannot be shown by asking a witness who has no personal knowledge to state the number as given him by the company's tally.

A contract provided that one party should " deliver in Flat river, or branches, at suitable places for running by the River Log Running Co., to the mill of the other party." *Held* that if so delivered, the first party would not, under the contract, be responsible for any failure of delivery at the mill.

If the parties to a contract for furnishing logs have not agreed upon a scaler, defendants, in an action thereon, will not be bound by plaintiff's scale, but may show the quantity delivered by any other competent testimony. But a scale of the lumber manufactured from the logs would not be conclusive.

A contract to deliver a certain number of million feet of pine saw-logs, board measure, contemplates a log-scale if no other method of measurement is provided for; but in the absence of a log-scale, a scale of the manufactured lumber, though not conclusive, is admissible as helping to determine the quantity delivered, in connection with other facts, such as that the lumber would be likely to overrun or fall short of the log scale according to whether it was manufactured into plank or small boards.

Where a contract provided that one party should furnish logs to be sawed and the other should advance money as called for, it was for the jury, in an action on the contract to determine the

amount advanced and the quantity of logs which it bound the other party to deliver.

In an action on a contract whereby defendant was bound to manufacture logs furnished by plaintiff, into lumber, a charge that it was his duty to do so in a workmanlike and economical way only states what the law requires in the case of any contract, and cannot prejudice defendant, especially if no question is raised as to how it was done.

A mill-owner who contracted for a quantity of logs to be delivered to him for sawing, sought, in an action on the contract, to recoup damages on the ground that the required quantity was not delivered, and his mill had to remain idle. *Held* that he could not let it remain idle in order to recover full damages, if he could have obtained logs from other sources. But *it seems* that the burden of proving that he could have· done so is on the other party.

Error to Muskegon. Submitted June 10. Decided July 1.

Assumpsit by Sanford & Peck for an unpaid balance of money received by Hopkins & Ferry on sales of lumber furnished· by plaintiffs, and which plaintiffs claim should have been paid over to them under the following contract:

Memorandum of agreement made this day, by and between S. R. Sanford and S. B. Peck, of Muskegon, Michigan, and John W. Hopkins & Co., of Ferrysburg, Michigan, being the providing of pine saw logs, to the amount of not less than four million feet, board measure, and limited to six million feet, by Messrs. Sanford & Peck above named, and an advance of money from time to time, of three dollars per M. feet, and the sawing of said logs at three dollars and fifty cents per M. feet, into merchantable lumber, by Messrs. Hopkins & Co. above named, at their mill at Ferrysburg, Mich.

The particulars of this agreement, an outline of which is above given, are as follows, to which each of the parties above named hereby obligate and bind themselves to a full and satisfactory fulfillment. The land from which said logs are to be taken, and upon which said advances are to be made, is by title in S. B. Peck above named, and is known and described as follows, to-wit: [Here follow various descriptions of land.]

And the above descriptions of land are hereby pledged and mortgaged as security collateral for the amount of money advanced by above named John W. Hopkins &

Co. to above named S. R. Sanford and S. B. Peck, as fully and completely as though separate and distinct mortgage of said land was hereby and herein made to John W. Hopkins & Co. above named, but upon the fulfillment of this contract, then the said described land shall be free from this incumbrance this day made.

Items of agreement are furthermore as follows, viz.: by Messrs. Sanford & Peck, to procure from said lands during the winter and spring of A. D. 1870 and 1871, not less than four million, and from that amount up to six million of pine saw logs; deliver in Flat river, or branches at suitable places for running by the River Log Running Co., to John W. Hopkins & Co.'s mill, to pay as part of the amount advanced, ten per cent. interest on all sums of money advanced by John W. Hopkins & Co. upon said logging contract, or the log running assessments; to pay all charges upon said logs to deliver in John W. Hopkins & Co.'s mill; to pay three dollars and fifty cents per M. feet for sawing said logs into lumber, and suitably piling said lumber on the dock, ready for shipment; to pay four dollars per M. feet for all pickets made and so piled from said logs, should there be any additional cross piling or planing or hauling of said lumber; the said work shall be chargeable to said lumber at a price to be mutually agreed upon hereafter, for such work; to pay any freight or commission incident to shipping and selling said lumber in any market outside of Hopkins & Co.'s mill yard; to pay one-half of the tally bills of lumber shipped.

By John W. Hopkins & Co. to advance in cash from time to time as called for to the amount of three dollars per M. feet, say twelve thousand dollars upon four million feet of logs and relatively the same for a greater number of M. feet, and in amount of two thousand dollars on date of this contract, the receipt whereof is hereby acknowledged; two thousand dollars on the first day of Dec., four thousand dollars on the first day of Jan., A. D. 1871, and four thousand dollars on the first day of February, and a like *pro rata* payments at subsequent times based upon the amount of logs made ready and scaled for running; to advance the amount in cash necessary for running and delivering said logs in the boom, to saw said logs into suitable and merchantable lumber and pickets, and piling on mill dock ready for shipment in a good and workmanlike manner, for which work $3.50 per M. shall be the bill for the lumber and $4.00 per M. for the pickets. To cross-pile, or plane or resaw, as may be needful, such lumber at a price to be mutually agreed upon hereafter for such work; to sell and dispose of this lumber at the mill or

other market subject to charge for such sale only, when sold by shipment at market away from this port; to pay one-half of the tally bill of lumber shipped to another market; to keep accurate account of all expenses, charges and sales, and to pay over to Messrs. Sanford & Peck all and any amount accruing as the result of the sales of this lumber over and above the amount of advances, interest, charges and commissions above named.

To the above agreement and obligation we do hereby obligate and bind ourselves this fourth day of November, A. D. 1870. Interlining in regard to planing, etc., made before signing.

[Signed.]                     SAMUEL R. SANFORD.       [L. S.]
                              SAMUEL B. PECK.          [L. S.]
                              JOHN W. HOPKINS & CO.    [L. S.]

Plaintiff below recovered and defendants bring error.

*John C. Fitz Gerald* for plaintiffs in error. The duties and powers of a referee are the same after a reversal and order for new trial as if he had not reported, if the order of reference has not been set aside, *Shuart v. Taylor*, 7 How. Pr., 252; *Kiersted v. Orange & Alex. R. R.*, 54 How. Pr., 41; an order entered by consent should only be vacated by consent, *Smith v. Warner*, 14 Mich., 159; *Billings v. Vanderbrek*, 15 How. Pr., 297; when an order of reference has been entered by consent and the referee has been chosen by the parties, the right to a trial by the court is waived, *Keator v. Ulster & Delaware P. R. Co.*, 7 How. Pr., 41; *Knapp v. Fisher*, 49 Vt., 96; *Devlin v. Mayor*, 54 How. Pr., 11, note, p. 22; damages for breach of contract should be such as arise from the breach or may be supposed to have been contemplated by the parties, *Hadley v. Baxendale*, 9 Exch., 341; *Booth v. Spuyten Duyvil Rolling Mills Co.*, 60 N. Y., 490; *Hutchings v. Ladd*, 16 Mich., 504; *Messmore v. N. Y. Shot & Lead Co.*, 40 N. Y., 427; *Fessler v. Love*, 48 Penn. St., 410; in this case defendants may recoup as damages the loss of profits resulting from plaintiff's failure to fulfill his share of the contract, and should recover also for the loss of the use of the mill, *Morrison v. Lovejoy*, 6 Minn., 354; and the burden was on the

plaintiff to show that defendant could have got more work of the same kind, *Costigan v. Mohawk & Hudson R. R.*, 2 Den., 609.

*Smith, Nims & Erwin* for defendants in error. ·When a referee has reported he cannot act again' until called· on by the court, *Rice v. Benedict*, 18 Mich., 75; *Trufant v. Merrill*, 37 How. Pr., 531; *Daverkosen v. Kelley*, 43 Cal., 477.

MARSTON, J. The questions in this case arise upon the trial of an action brought to recover a balance claimed under a written contract. This case came before us at the April term, 1878 (*Hopkins v. Sanford*, 38 Mich.), when the judgment was reversed and a new trial ordered.

Previous ·to the first trial in the court below, in accordance with a stipulation of the attorneys, the case was referred to Robert W. Duncan as sole referee. After the reversal, when the case again came on· for trial, counsel for defendants objected to the issue being tried before the court and a jury, insisting that under the stipulation and order of the court, such order not having been vacated or set aside, it could only be tried before the referee. The court overruled the objection, the case proceeded and was tried before the court and jury, a judgment rendered in favor of plaintiff, and upon this ruling error is assigned.

We are of opinion that in this there was no error. The effect of a reversal by this court, where a new trial is ordered, is to send the case back to the court below to be tried in the usual and customary manner by the court, with or without a jury as may thereafter be determined. The case, where tried before a referee the first time, does not again go before him; his powers and duties in the premises ceased when he made his report and a judgment was entered thereon. The case could no more properly be referred back to him

than it could, when tried before a jury, be sent back to them; and in a case of disputed facts, where the referee has made a report with conclusions thereon, and a new trial is afterwards ordered, the case should not be again sent to him. The parties if they desire may have the case again referred to the same referee, but either party has a right to demand that the issue be tried by an impartial jury; and a previous reference and trial thereon had before a referee under a stipulation, will not cut off this right. *Rice v. Benedict*, 18 Mich., 75.

Upon the trial defendant sought to show by oral testimony that prior to and at the time the contract in question was entered into, it was known to both parties that defendants would depend upon these logs to keep their mill running during the then coming sawing season. The defendants claimed that there had been a breach of the contract in that the requisite quantity of logs was not delivered; that in consequence thereof they were entitled to recover damages, not alone for the loss of profits which they would have made by sawing the logs, but also in consequence of their mill remaining idle for want of logs which they were unable to obtain, and it was in view of this second claim that the evidence was offered.

We have no doubt that oral evidence would be admissible in certain cases to show the special circumstances known to the parties, under which the contract was entered into, for the purpose of laying the foundation for damages, which could not otherwise be said to have been in the contemplation of the parties at that time. We are of opinion, however, that the evidence offered was not admissible in this case for the purpose for which it was offered.

The defendants claimed and the court held that they were entitled to recover the net profits they would have made in sawing the logs had they been delivered. This was all they could have received had there been

full performance of the contract. To have earned this, had plaintiffs performed on their part, defendants must have operated their mill in manufacturing the logs into lumber and pickets. Under the ruling of the court they were permitted to recover the same profits without running their mill. What damage beyond this they sustained, because unable to run their mill, is not apparent. Under the charge the mill idle was as profitable to them as it could have been if operated to its fullest capacity, and this without incurring any of the risks or wear of machinery usually pertaining to the manufacture of lumber. If any special or peculiar damage was sustained in consequence of the mill having to remain idle, over and above the loss of what the profits would have been from sawing under this contract, they should have been pointed out and the attention of the court called thereto, so that the question could have been specifically passed upon. The offer made was, in effect, to show that if the logs were not delivered, the mill would have to lie idle, and that plaintiffs so understood at the time the contract was entered into. The usual and natural consequence of such a result would be the loss of running profits, and from aught that appears in this case no greater loss could have been contemplated. As damages to this extent were proved, and the jury charged that defendants would be entitled to such damages, we do not see how they were prejudiced by the ruling.

It is next objected that the court erred in not permitting the witness Glover to testify as to the number of logs and the scale thereof, delivered by the boom company, and also in the refusal to charge as requested in defendants' sixth request, and in the charge as given relative to the delivery of these logs.

The court was right in excluding Glover's testimony. He had no personal knowledge. The question asked was to state the number as given him by the boom com-

pany's tally. The quantity could not be proven in this way. The witness, however, afterwards was permitted to and did testify as to the number of logs, and the scale thereof, delivered by the boom company at defendants' mill.

Defendants' sixth request to charge, which was refused, was that the logs, by the terms of the contract, must be delivered at defendants' mill, and that they were responsible for and would have to give the plaintiffs credit only for the logs so delivered. The charge as given on this branch of the case, which is complained of, was:

"8th. Now, if they used such a scale as I have indicated, namely, the one in general use upon Flat river and its tributaries, and made a fair scale of these logs and put them into the stream according to the terms of this contract, then, although there might have been a small amount of shortage, so to speak, after the logs were converted into lumber, yet these plaintiffs would not be responsible in damages to the defendants for such shortage.

"9th. If Messrs. Sanford & Peck delivered the logs at such places, namely, at suitable places in these streams— Flat river and its tributaries—then they were to be taken up as contemplated by this agreement by the log-driving company and driven down as before indicated to the mill of the defendants.

"10th. Who was to be responsible for this driving?  *  *  * and it is fair to say that it was contemplated by these parties at the time this contract was made, that when Messrs. Sanford & Peck delivered these logs in Flat river, or the tributaries of Flat river, that neither party was to be particularly responsible for the good faith, diligence, etc., of whatever log-driving company should take the logs at those points and drive them down the streams."

No question properly arises upon that part of the sixth request which was refused, viz.: that Hopkins & Co. were responsible and would have to give the plaintiffs credit only for the logs delivered at their mill. There was no pretense made that defendants could in any way be held responsible for logs not actually received by them at their mill.

The material question in this connection relates to

the place of delivery and the method of determining the quantity, and the doubts arise from the very ambiguous manner in which this contract was drawn.   The parties could, in language that would admit of no doubt, have provided just where the logs should be delivered and by whom and at whose risk, and in equally clear terms have agreed as to the time, method and manner of ascertaining the quantity.

The opinion of a majority of the court is that it was the duty of plaintiffs to deliver the logs in Flat river or its tributaries, and that if they so delivered the logs at suitable places for running by the River Log-Running Company they would not be responsible for any want of delivery of the same at defendants' mill.

The contract does with sufficient clearness provide that upon such a delivery being made, the logs shall thereupon be taken charge of by the River Log-Running Company and be by that company delivered at defendant's mill.   The expense of running the logs was to be paid by the plaintiffs, but to be advanced by the defendants and by them retained out of the proceeds of the lumber sales.   The plaintiffs were bound, therefore, to deliver in Flat river and its tributaries the quantity of logs called for under the contract and advances made thereunder.

As the parties did not agree upon any person to scale the logs, the defendants would not be bound by the plaintiffs' scale but would be at liberty to resort to any other competent testimony to prove the quantity actually delivered.   Competent scalers would have no serious difficulty in ascertaining the quantity of feet, board measure, contained in the logs delivered,—and it would not be necessary for such purpose, under the contract, to resort to the scale of the lumber manufactured from the logs.   We do not say that a scale of the lumber might not be resorted to as evidence tending to show the quantity of logs delivered in certain cases, but it could not, as insisted on by defendants' counsel in this

case, be conclusive or the only method of arriving at the number of thousand feet of logs delivered.

This contract required that four million feet, board measure, of pine saw-logs should be delivered; this contemplates a log scale, in the absence of any other method being provided for. It is true that no log scale can be made that will be strictly accurate—much of such a scale must depend upon the judgment of the scaler—and yet with competent scalers there should not be any essential difference. If there is, a scale of the lumber may be resorted to, not as conclusive but as evidence tending to, and which, with all the other evidence, might be considered by the jury as an aid in determining the quantity actually delivered. If the logs were manufactured into plank, the lumber would overrun the log scale; if into less than inch boards, it would be likely to fall short. All such things should be taken into consideration. Had the parties in this case agreed upon some suitable person to scale the logs, then in the absence of fraud or mistake, no such difficulties could have arisen.

We discover no error in the charge of the court upon this part of the case.

We have carefully examined the other errors assigned, but shall not discuss each at length. The court we think very fairly, and in accordance with the previous ruling of this court in this case, left it to the jury to determine the amount advanced by defendants under this contract, and the quantity of logs plaintiffs thereby became obligated to deliver. And the court in calling attention to defendants' duty to manufacture the logs delivered, in a workmanlike and economical manner, but stated what the law requires in all such contracts. Such a remark could in no way prejudice defendants—most assuredly if no question was raised as to the way in which the logs were manufactured into lumber.

The court charged that if there was a breach of the contract by plaintiffs failing to deliver the full contract

quantity of logs, the defendants could not permit their mill to remain idle in order to recover full damages, if they could obtain logs to run their mill from other sources. The court farther charged the jury "that the burden of proof was upon the plaintiffs to show that defendants could have found other logs to manufacture at their mill, and this by a preponderance of evidence." That it would be the clear duty of defendants to keep their mill running, in case they could obtain logs from other sources at the same or other terms, for the purpose of reducing their losses and consequently the damages, there would seem to be no doubt. What efforts, or the extent thereof, that they should make, were not stated, but under the charge as to the person upon whom the burden of proof rested, the question became of no consequence, as no offer was made by plaintiffs to show that defendants could by any efforts have obtained other logs upon any terms.

The charge of the court, we think, fully covered all the questions presented and was in accordance with the views herein expressed, and in some respects, we think, was more favorable to defendants than they were entitled to.

The judgment must be affirmed with costs.

The other Justices concurred.