F. W. KOENIGKRAEMER, Respondent, v. MISSOURI GLASS COMPANY, Appellant.

St. Louis Court of Appeals, January 4, 1887.

1. MASTER AND SERVANT—WRONGFUL DISCHARGE—BURDEN OF PROOF.
In an action by a servant for damages for a wrongful discharge prior to the expiration of his term of employment, the burden is on the master to show that the discharge was for good cause.

2. ——— MEASURE OF DAMAGES.—In such an action the measure of damages is, *prima facie*, the stipulated wages, and, in mitigation of such damages, it must affirmatively appear that the servant obtained, or, by the exercise of reasonable diligence, might have obtained, other similar employment during the term.

APPEAL from the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Affirmed.*

ROBERT & HITCHCOCK, for the appellant: In suing for a breach of a contract of employment the servant must show due diligence in seeking other employment. *Stone v. Vimont*, 7 Mo. App. 282; *Ream v. Watkins*, 27 Mo. 518; *Saxonia Co. v. Cook*, 7 Colorado, 569. The master may discharge his servant for cause. *Sugg v. Blow*, 17 Mo. 359.

B. SCHNURMACHER, for the respondent: The servant is bound only to seek other similar employment. *Ream v. Watkins*, 27 Mo. 518. Instructions which leave the jury to conjecture what is "due diligence" are properly

refused. *Buel v. Transfer Co.*, 45 Mo. 562 ; *Anderson v. McPike*, 86 Mo. 293 ;, *Digby v. Insurance Co.*, 3 Mo. App. 603.

ROMBAUER, J., delivered the opinion of the court.

On the tenth of April, 1884, the plaintiff entered into a written contract with the defendant to act as its traveling salesman at an agreed compensation of seventy-five dollars a month, and traveling expenses. The contract was originally terminable at the defendant's option on the first of July, or thirty-first of December, 1884, but was, at the close of the year 1884, renewed and continued in force until December 31, 1885.

The parts of said contract which are material to the present inquiry are as follows :

"I agree and promise to serve the Missouri Glass Company, of St. Louis, Missouri, in the capacity of a salesman, energetically, faithfully, and honorably, devoting daily my entire time and best abilities, always to the advancement of their best and most profitable interest, and will thoroughly and regularly canvass, as their salesman, all such territory as they may assign to my care.  *  *  *  I am also to make and mail daily reports to said company, as noted on cards furnished for said purpose.  *  *  *  A breach of this contract in any of its particulars shall be sufficient reason for above company to at once cancel same."

The plaintiff was discharged May 1, 1885. On November 21, 1885, he instituted this action, and filed a petition containing two counts, the first to recover a balance of one hundred and fifty dollars, claimed to be due for services performed up to May 1, 1885, and the second to recover damages caused to him by the wrongful discharge. The jury found in favor of the plaintiff on both counts, assessing his damages on the second count, which is the only one in dispute, at $507.52.

On the trial the plaintiff gave evidence tending to show that he complied with the terms of his contract.

That, on or about April 23, 1885, he was ordered by the defendant to report at St. Louis, and upon his arrival was told that his services were unsatisfactory. He reported at the office from that time on until May 1, 1885, when he was told he need not call again, that his services were no longer wanted.

The defendant gave evidence tending to show that the plaintiff had been drinking in the year 1884. This was, however, prior to the renewal of his contract, and there was no evidence as to his habits in 1885. That the plaintiff failed to furnish daily reports, as required by his contract, in April, 1885. That his entire sales to solvent customers up to the twenty-third, in the month of April, 1885, amounted only to $99.64, and his expenses during the corresponding period to one hundred and ninety-nine dollars. That, at the close of April, 1885, the defendant tendered to the plaintiff $141.70, all that the plaintiff claimed as due up to that time, accompanied with a receipt in full of all demands, which the plaintiff was requested to sign as a condition of payment, and that the plaintiff refused to take the money on that condition.

The plaintiff gave some evidence tending to show that he made efforts to procure similar employment after his discharge, and prior to the institution of the suit, and failed, and the defendant gave some evidence tending to show that it could have given to the plaintiff similar employment during that period if he had applied, but there was no evidence that the defendant had tendered such employment to the plaintiff.

This was in substance all the evidence.

The errors assigned are, that the court excluded proper testimony offered by the defendant ; that it gave erroneous instructions for the plaintiff, and refused proper instructions for the defendant.

The court refused to allow the plaintiff to show what the object was of inserting into the contract the clause requiring daily reports. This was no error. The de-

fendant was at liberty to cancel the contract, if any of its clauses were violated by the plaintiff, and whether the clause was reasonable or not was an immaterial inquiry. The same reason disposes of the objection that the court refused to the defendant the right to show that it was customary to hold traveling agents up to their daily reports. In fact, if the defendant would have asked an unobjectionable instruction on this subject, the refusal of it would have been error. But the only instruction asked by the defendant on that subject was as follows:

"2. The court instructs the jury that they will find for the defendant, unless they find from the evidence that the·plaintiff furnished daily reports to said company upon cards furnished for the purpose (provided, they also find that the defendant furnished said cards), while in its employ."

That instruction the defendant was clearly not entitled to, because it was unlimited in time, and required the plaintiff to show, as a condition precedent to his recovery, that he furnished daily reports, whether in town or out of town, while in the defendant's employ at any time.

On the question of damages, the court gave the following instruction on behalf of the plaintiff:

"3. If the jury find for the plaintiff on the second count of his petition, they will, in assessing his damages, allow him the contract price agreed upon between him and the defendant, commencing from May 1, 1885, deducting any sum which they believe he might have received for similar services during the residue of the time for which he contracted to serve the defendant up to the twenty-first day of November, 1885, the commencement of this suit, but it rests on the defendant to show what the plaintiff might have received or earned during that time."

And refused the following instruction asked by the defendant:

"3. The court instructs the jury that the plaintiff

can not recover on the second count, unless during the time following his discharge and the thirty-first of December, 1885, he used due diligence in attempting to secure employment and failed."

There was no error in this. The defendant assumes that it was incumbent upon the plaintiff to show that he made reasonable efforts in trying to obtain other employment, and that the burden of proof on that subject rested with the plaintiff. This is a misconception of the law. The plaintiff's damages, for breach of a contract of employment for a time certain, are *prima facie* the contract price agreed upon for such service. It is unquestionably his duty to use reasonable efforts to find other similar employment, if he can, but that he has obtained such employment, or that, by reasonable efforts, he might have obtained it, is incumbent upon the defendant to show in mitigation of damages. The cases on this subject are collected and fully discussed in Wood on Master and Servant, (pp. 245, 246, and notes), and the reason for the rule is given that in case of a wrongful discharge the master is the wrong-doer, and presumptions between him and the wronged party should be made in favor of the latter. The *onus*, therefore, in all such cases must be upon the defendant.

The other instructions asked by the defendant are so clearly objectionable that it is needless to discuss them.

It seems to be a hardship that the defendant should be required to pay for services it has not received, or else to continue the employment of a servant, although such employment results in constant loss. That, however, is the result of its improvident contract. If it had made the plaintiff's compensation depend upon orders secured, or if it had reserved the right to discharge him when such orders, in any given time, fell below a given amount, such result could not follow.

Finding no error in the record, we must affirm the judgment. It is so ordered. All the judges concur.