## WILLIAM E. PECK & COMPANY, Respondent, v. KANSAS CITY METAL ROOFING AND CORRUGATING COMPANY, Appellant.

**Kansas City Court of Appeals, June 9, 1902.**

1. **Contracts: PREVENTING PERFORMANCE: INSTRUCTION.** The defendant agreed to advertise in plaintiff's journal for a given time for a given amount, and to furnish the necessary matter. It afterward cancelled the contract and refused to furnish the matter. The plaintiff furnished the matter itself and carried the advertisement. *Held*, plaintiff had no power to furnish the matter and so perform the contract, and it was error to refuse to so instruct the jury.

2. ———: **BREACH OF: DAMAGES.** The failure to furnish the matter was a breach of the contract, which the defendant had a right to do on the usual terms of compensating the plaintiff for its damages.

3. ———: **PREVENTING PERFORMANCE: BREACH: MEASURE OF DAMAGES.** The refusal to permit the performance of a contract is equivalent to performance for the purpose of maintaining an action, and the contract price will be the measure of damages, unless it be shown that the actual damages were less.

4. ———: ———: **MITIGATING DAMAGES.** Where a party is prevented from performing a contract, he must use reasonable efforts to secure other employment and so lessen the damages; and where an advertiser refuses to furnish copy contracted to be furnished, it is the duty of the journalist to secure other matter to take its place.

5. ———: **BREACH OF: MEASURE OF DAMAGES.** Another measure of damages is the difference between the contract price and what it would have cost to perform the contract; but in this case the former rule is regarded as the better.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED AND REMANDED.

*Wollman, Solomon & Cooper* for appellant.

(1) When plaintiff received notice of the cancellation of the contract, it was its duty to stop right then and there, and if any damages had been sustained up to that time, it was entitled to recover them. We invoke the well-known principle of law, that it is the duty of a party to a contract to prevent by all reasonable effort the accumulation of damages. State ex rel. v. Harrington, 44 Mo. App. 297; Lawson v. Price, 2 Law & Eq. Rep. 426; Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo. 325; Railroad v. Mihlman, 17 Kas. 224; Sedgwick on Measure of Damages (4 Ed.), p. 235; Shannon v. Comstock, 21 Wend. 457; Chamberlain v. McAllister, 6 Dana (Ky.) 352; Stewart v. Patton, 65 Mo. App. 21; Connoble v. Clark, 38 Mo. App. 476; Barngrover v. Naack, 46 Mo. App. 407.

*J. T. Clayton* for respondents.

(1) The measure of plaintiff's damages was the contract price agreed to and stated in the contract. Pond v. Wyman, 15 Mo. 175; Boland v. Quarry Co., 127 Mo. 524; Neems v. Herbert, 25 Mo. 352; Halpin v. Mount, 57 Mo. App. 59; Murphy v. Black, 78 Mo. App. 316; 2 Parsons on Contract, page 188; Christ v. Armour, 34 Barbour 384; McPherson v. Walker, 40 Ill. 373; Daniels v. Newton, 114 Mass. 530; Carstens v. McDonald, 38 Neb. 861. (2) Did the court commit error in permitting appellant to introduce evidence, the purport of which was to show a cancellation or rescission of its contract where same was not specially pleaded? Riggins v. Railroad, 73 Mo. 598; Brown v. Weldin, 27 Mo. App. 251; Reynolds v. Reynolds, 45 Mo. App. 622; Phester v. Gove, 48 Mo. App. 455.

SMITH, P. J.—The defendant addressed a written proposition to the plaintiff which was by the latter accepted, and thereby became a binding contract between them, to the effect following:

"Kansas City, Mo., Jan. 11, 1897.
"Messrs. William E. Peck & Company,
        62 & 64 William Street, New York.
"Gentlemen:
    "Please insert our illustrations, descriptions, lists, etc., to occupy in
            "PECK'S EXPORT PURCHASE INDEX.
                    (Copyrighted.)
1-4 page English and Spanish editions, for full year term, and thereafter until forbidden.
    "1.  We will within ten days furnish to your order matter, cuts, etc., subject to your approval, for printing same.
    "2.  It is understood that we will, within five days from date of receipt thereof, return to you corrected the proof which you are to submit to us before issue.  If proof be not returned, you are to conclude that it is satisfactory to us.
    3.  In consideration of the above and copy of each issue, we agree to pay to your order $325 per annum payable monthly $27.08 per month.
(Name) "THE KANSAS CITY METAL ROOFING & CORRUGATING CO.
            "JEROME TWITCHELL, President.
    "Accepted, Jan. 14, 1897.
            "WM. E. PECK & CO."

    Seven days later on, the defendant wrote to the plaintiff "recalling the advertising contract" with it, and thereafter refused to furnish plaintiff, illustrations, descriptions, lists, etc., to occupy the space in the plaintiff's "Export Purchase Index" according to the contract.  The defendant thereby forbid and prevented performance of the contract.  But notwithstanding this, the plaintiff itself undertook to formulate and furnish the advertising matter for defendant, and publish it in the space contracted for during the stipulated time, upon the erroneous idea that this would constitute a complete performance of the contract on its part.
    This action was brought and tried upon the theory that even if the defendant had repudiated the contract,

that the plaintiff had the right to ignore that fact and to proceed to modify it without the assent of defendant in such a way as that it, and not defendant, should formulate and prepare illustrations, descriptions, lists, etc., for insertion in the plaintiff's publication. No such authority was given the plaintiff by the contract. This was the assumption of an unauthorized power, and could in no sense be regarded as performance of the contract. It was "love's labor lost," and went for naught. At the trial the defendant requested the court to declare the law to be: That plaintiff had no right to insert in its publication known as "Peck's Export Purchase Index," any illustrations, descriptions, lists or advertising matter for defendant except such as might be furnished to it by defendant, and if defendant refused to furnish to plaintiff the matter, cuts, etc., for the same, plaintiff had no right to prepare, insert or publish in said publication any cuts, card or advertisement for defendant. But this it declined to do, and this action was, as we think, erroneous.

When the defendant repudiated the contract and refused to furnish the advertising matter called for by the contract, this amounted to a breach of the contract. Seaman v. Paddock, 55 Mo. App. loc. cit. 301. On general principles, each party had the legal right to violate the contract on the usual terms of compensating the other for the damages, and subject to the jurisdiction of a court of equity to decree specific performance. Sedgwick on Damages, sec. 569.

In a case where A. was employed by B. to do certain work, and after it was begun the order was countermanded. Notwithstanding this, B. went on to complete the job and insisted that he was entitled to recover for doing the whole, and for the materials furnished. It was held that in all such cases the just claims of the party employed are satisfied when he is fully recompensed for his part performed, and indemnified for his loss in respect to the part left unexecuted; and to persist in accumulating a larger demand is not consistent with good faith towards his employer. Sedgwick on

Damages, sec. 618; Clark v. Marsiglia, 1 Denio 317. It would be strange, indeed, if the defendant could not countermand its order for this printing. It would, of course, thereby subject itself to liability to plaintiff to pay the damages sustained. It may have been that the defendant desired to retire from business, or to change the nature of the same, or, to discontinue the manufacture and sale of the articles which it had contracted to have advertised, or it may have been that owing to some change or circumstance in its own condition, or in that of the trade, its interests required that the publication of the matter specified in the contract be not made. Yet, according to the theory of the plaintiff, the defendant must continue the publication for the period called for by the contract. This was clearly erroneous.

The defendant, as has been stated, having the right to break the contract, and thus subject itself to the consequent damages, the question remains, what is the measure thereof? In Pond v. Wyman, 15 Mo. 183, the rule is laid down that the refusal of the defendant to permit the plaintiff to perform his contract is equivalent to a performance for the purpose of maintaining an action on the contract, and the contract price of the services (or work—Park v. Kitchen, 1 Mo. App. 358) will be the measure of the recovery of the plaintiff, unless the defendant, by evidence, shows that the damages actually sustained are less than the price agreed upon. And this rule has been reasserted and approved in many other and later cases in this State. Bean v. Miller, 69 Mo. 384; Nearns v. Harbert, 25 Mo. 352; Halpin v. Manny, 57 Mo. App. 61; Dobbins v. Edmonds, 18 Mo. App. 307; Park v. Kitchen, 1 Mo. App. 358.

The rule will be somewhat modified by the particular circumstances of each case as to the exact measure of the damages. In Miller v. Shoe Co., 26 Mo. App. 61, it was said the "plaintiff's damage for breach of a contract of employment for a time certain, is, prima facie, the contract price agreed upon for his services. It is, unquestionably, his duty to use reasonable efforts

to find other similar employment, if he can, but that he has obtained such employment, or that *by reasonable efforts he might have obtained it, it is incumbent upon defendant to show in mitigation of damages.*" Wood on Master and Servant, pp. 245, 246; Koenigkraemer v. Glass Co., 24 Mo. App. 124; Boland v. Quarry Co., 127 Mo. 520. And in other cases it is held that the amount of the damages in such cases is a question for the jury, under all the circumstances disclosed by the evidence. Lambert v. Hartshorne, 65 Mo. 551; Halsey v. Meinrath, 54 Mo. App. 335.

The plaintiff, as has been already intimated, had no right to fill the space in its publication, called for by the contract, with advertising matter prepared by itself. It was its duty, after the defendant had notified it of the repudiation of the contract, and had refused to furnish the "illustrations, descriptions, lists, etc.," to use reasonable efforts to obtain other advertisements at the best price attainable to fill the vacant space which defendant had contracted for, but declined to use. If the plaintiff could, by the exercise of reasonable efforts, have filled the vacant space contracted for by defendant with other advertising matter, and did not do so, then the defendant is entitled to mitigate the damages to which plaintiff is entitled by that amount, whatever it may be, and it is incumbent on the defendant to make this showing. It is not probable that so small a space as that contracted for, in the columns of a commercial publication of so extensive a circulation as that here, could not be filled by other advertising matter, had reasonable effort been employed in that direction. Whether or not this could have been accomplished, is one of the questions which should be left to the jury to decide.

In an action upon a contract, against an employer for preventing performance, where the work has not been begun, the contractor is entitled to recover the difference between the contract price and what it would cost to perform the contract. Sutherland on Damages, sec. 713, and numerous cases cited in note 6; Addison on Contracts, sec. 881; Singleton v. Wilson, 85 Tenn. 344.

We are inclined to think that the preceding rule relating to the measure of damages in cases where performance of contracts for work or service has been prevented by the employer, should be applied to a case like the present, rather than that last referred to for the admeasurement of damages where the performance of a building contract, and the like, has been prevented. The contract here more nearly resembles the former than it does the latter kind of contracts.

The judgment, we think, should be reversed and cause remanded, and it is so ordered.   All concur.