TRADESMAN CO. *v.* SUPERIOR MANUFACTURING CO.

1. EVIDENCE — PAROL EVIDENCE — WRITTEN CONTRACT — ADMISSIBILITY.

    Parol evidence of fraudulent representations consisting of statements of the effect of a written contract and of the rights of the parties thereunder is inadmissible as tending to vary the terms of the written contract, and not being such false representations of existing material facts as to avoid the contract.

2. CONTRACTS—RESCISSION—DAMAGES.

    A party to an executory contract may stop performance by the other party by a distinct, unequivocal and absolute renunciation thereof, and thereafter the right of such other party is limited to a recovery of damages for the breach of the contract involved.

3. SAME—ADVERTISING CONTRACT—RENUNCIATION—NOTICE—DUTY OF PUBLISHER—LESSENING DAMAGES.

    Upon notice of renunciation of a contract for advertising space it is the duty of the publisher to use reasonable efforts to obtain other advertisements at the best price attainable, and the measure of damages is the contract price, less the amount obtained, or which might have been obtained for such other advertisements.

4. SAME—BURDEN OF PROOF.

    The burden of proof is on the party wrongfully repudiating a contract to show to what extent the damages were lessened or might have been lessened.

ON MOTION FOR REHEARING.

CONTRACTS—ADVERTISING—RENUNCIATION — DUTY OF PUBLISHER.

    Where a purchaser of advertising space repudiates his contract the publisher is under no obligation to split up the time or space covered by the contract in his effort to dispose of the space to lessen the damages, neither need he refrain from selling other unoccupied space to other parties and thereby deprive himself of the profits which, except for the violation of the contract, would have been secured.

Error to Kent; Wolcott, J. Submitted January 23,

1907. (Docket No. 91.) Decided April 2, 1907. Motion for rehearing denied July 1, 1907.

Assumpsit by the Michigan Tradesman against the Superior Manufacturing Company for breach of an advertising contract. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Murray & Storm* ( *Charles E. Ward*, of counsel), for appellant.

*Hatch & Raymond*, for appellee.

BLAIR, J.   On the 5th day of January, 1903, the parties to this suit entered into the following contract:

"ANN ARBOR, MICH., Jan. 5, 1903.
" We hereby authorize the Tradesman Company to insert our advertisement to occupy 24 inches on inside front page cover in the Michigan Tradesman, for 104 consecutive weeks and until further notice for which we agree to pay 55 cents per inch per week, payable monthly.
" Extra space in anniversary issues to be $1 per inch.
"THE SUPERIOR MANUFG. CO.,
"Per H. H. SEELEY.
"Accepted
"TRADESMAN COMPANY,
"By KARL K. ALBERTS."

Across the end of said agreement appears the following, "O. K., E. A. S." On the back of said agreement appears the following:

"Advertiser to have the privilege of discontinuing this contract after one year from date, if desired.
"ALBERT."

The letters " O. K., E. A. S." were placed on said contract by E. A. Stowe, president of the plaintiff. Defendant's advertisement was published by plaintiff till April 29, 1903, when defendant ordered it discontinued, and refused to further recognize the contract. The space to which defendant was entitled was practically left vacant till June 3, 1903, from which time such space was occupied by other advertisements.

Among the findings of fact by the court are the following:

"During the entire 52 weeks next following the first publication of defendant's advertisement, the amount received by plaintiff for advertisements published in the Michigan Tradesman more than paid all the expenses of publishing the paper. If defendant's advertisement had been published in the Michigan Tradesman for the 52 weeks called for in said contract, plaintiff's profit from the carrying out of the contract would have equalled the entire contract price. ·

"During the whole 52 weeks immediately following the first publication of defendant's advertisement in the Michigan Tradesman, plaintiff had for sale advertising space in said paper exceeding the space which would have been occupied by defendant's advertisement in addition to the space which would have been occupied by defendant's advertisement, in case it had been published for the entire period of the contract.  *  *  *  The amount which would have been due from defendant to the plaintiff at the commencement of this suit, for the publication of said advertisement for 52 weeks, over and above all payments made for defendant's advertisements published would be $488.40. Defendant received for other advertisements published in the space which would have been occupied by defendant's advertisements if the contract had been carried out by defendant after the publication of defendant's advertisement was discontinued, the sum of $326.26.

"After defendant ordered its advertisement discontinued the plaintiff tried to sell the space contracted to defendant upon a contract for a year at the same price provided in defendant's contract, and would not cut the price for the purpose of selling the space. It did not attempt at all to sell the space for the balance of the unexpired year provided in the contract, nor to sell a portion of the space, nor to sell the space at a reduced figure."

The court's conclusion of law was as follows:      .

" I find, as a conclusion of law, that the plaintiff is entitled to recover of defendant damages for the breach of said contract on the part of the defendant in ordering the plaintiff to discontinue the publication of its advertisement, and by reason of its failure to furnish the plaintiff under said contract, material for its advertisement. Such dam-

ages consist of the profit which plaintiff would have made out of the contract if it had been performed by the defendant, less the amount received by plaintiff for the publication of other advertisements in the space which it had agreed to give to defendants. Such profits amounted to $488.40. The amount received by plaintiff from other advertisements amounted to $326.26, leaving a difference of $162.14, which, together with interest at the rate of 5 per cent. per annum from January 1, 1904, the time when said contract should have been completed to the rendition of judgment, amounting to $19.34, making a total of $181.48, the plaintiff is entitled to recover of the defendant and judgment will. therefore be rendered in favor of the plaintiff, and against the defendant for that amount, and costs to be taxed."

Defendant alleges that the court erred in excluding evidence of alleged fraudulent misrepresentations by plaintiff's agent, relied upon as a justification for rescinding the contract, and set up in defendant's notice under the plea of the general issue. The court held that such testimony was incompetent as tending to vary the terms of the contract, and in this, we think, he was correct. *Cohen* v. *Jackaboice*, 101 Mich. 409. The alleged fraudulent representations were, in substance, statements of the effect of the contract, and of defendant's rights thereunder; the result of proof of which would be to make a different contract than that executed by the parties. They were not such false representations of existing material facts as to avoid the contract.

It is also contended that the court erred in determining the measure of damages. As we have heretofore held, a party to an executory contract may stop performance by the other party by a distinct, unequivocal and absolute renunciation thereof, and thereafter the right of such other party is limited to a recovery of damages for the breach of the contract involved. *Wigent* v. *Marrs*, 130 Mich. 609. See, also, *William E. Peck & Co.* v. *Corrugating Co.*, 96 Mo. App. 212; *D. O. Haynes & Co.* v. *Nye*, 185 Mass. 507. It was the duty of plaintiff,

147 MICH.—45.

however, upon notice of renunciation of the contract by defendant, to use reasonable efforts to obtain other adver-tisements at the best price attainable, and the measure of damages would be the contract price less the amount obtained, or which might have been obtained for such other advertisements. *Hopkins* v. *Sanford*, 41 Mich. 243; *William E. Peck & Co.* v. *Corrugating Co.*, su-pra. The burden of proof is on the party wrongfully re-pudiating the contract to show to what extent the dam-ages were lessened or might have been lessened. Cases last cited; and *Farrell* v. *School District*, 98 Mich. 43; *Carver* v. *School District*, 113 Mich. 524.

The price charged by plaintiff for the space contracted for by defendant, if for a year, was 55 cents per inch; if for a shorter period, it was proportionately larger. The regular charge for inside space was 40 cents per inch, and if plaintiff had made no effort to obtain the 55 cent rate, the testimony of the president indicates that he might have filled the defendant's space at the 40 cent rate. If plaintiff had filled the space during the entire time at the 40 cent rate, it would have received $336 instead of $326.26, which it actually did receive. There was no tes-timony tending to show that the plaintiff should have re-ceived more than it actually did receive, and the court's conclusion of law is sustained by the evidence.

The judgment is affirmed.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. OSTRANDER, J., concurred in the result.

ON MOTION FOR REHEARING.

BLAIR, J. The only reason assigned in the motion, which, in our opinion, requires consideration is the fol-lowing:

"1. Because the court is in error in holding in the last paragraph of its opinion that the rate for inside advertising was 40 cents per inch, since the record ( page 16, line 5) shows it to be 50 cents per inch, and which, estimated upon the same basis computed by this court, of 24 inches,

at 50 cents per inch per week, for 35 weeks, would make a total of $420.00 instead of $336.00, or a difference of $84.00 in defendant's favor."

It is true, as alleged, that the regular charge for inside space was 50 cents per inch, but the advertising with which defendant's space was filled was not published at that rate.

"*Q.* And you say you would not let it go because you would not get the price?

"*A.* We never deviate from our rate card.

"*Q.* Yet didn't you tell us this morning that you had lots of advertising in this particular space for which you only obtained forty cents per inch?

"*A.* Yes, sir.

"*Q.* And put it in this space that you say has a value of fifty-five cents?

"*A.* Yes, sir.

"*Q.* To the defendant in this case?

"*A.* Yes, sir.

"*Q.* Well, now, wasn't that a cut in the price?

"*A.* No.

"*Q.* It occupied this space, you say?

"*A.* Yes.

"*Q.* And was for forty cents?

"*A.* Yes, sir.

"*Q.* And yet you contend that was not a cut in the price?

"*A.* No, sir. We never have made a cut of less than the regular rate for the inside cover page, nor did we ever take a contract at forty cents for such space. But it is our custom never to raise the price on a customer as long as he stays with us, so that we have some taken many years ago at thirty-two cents. * * * It was not a cut in the price for us to print these other advertisements on that page at forty cents 'because the advertisements were not contracted for that particular space.' They were contracted for run of paper."

Other advertisements were published in defendant's space at 50 cents, some at 53, some at 55, some at 77, some at 42. Plaintiff's manager testified that possibly this space might have been taken by some of their new customers at inside page rates.

"So the probabilities are that you could have filled this space with advertising if you had not felt obliged to tell the advertiser that he might have to vacate that space?

"*A.* Possibly by splitting it up into smaller spaces."

The plaintiff was under no legal obligation to split up the time or space covered by the contract; neither was he under obligation to refrain from selling other unoccupied space to other parties, and thereby deprive himself of the profits, which, except for the violation of the contract by defendant, would have been secured. The burden of proof was on the defendant to show that the plaintiff could have obtained more for the space than it actually did obtain, and we are still of the opinion that the defendant failed in this regard. The defendant received credit for all that the plaintiff received for this space, which, under its proofs, was all that it was entitled to.

Motion denied.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.