No. 34,350

CHARLES S. LIPS, *Appellee,* v. H. B. OPP, *Appellant.*

(96 P. 2d 865)

Opinion filed December 9, 1939.

*W. H. Carpenter, W. R. Carpenter,* both of Marion, and *Cliff Tupper, Jr.,* of San Angelo, Tex., for the appellant.

*Edwin S. McAnany, Thomas M. Van Cleave, Willard L. Phillips, Bernhard W. Alden, Patrick B. McAnany, Thomas M. Van Cleave, Jr.,* all of Kansas City, *Alfred E. Carroll* and *C. E. Carroll,* both of Alma, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This action was for damages for breach of three agistment contracts. From a judgment in favor of plaintiff defendant appeals.

The contracts sued on were dated April 18, 1931. By the terms of the contracts defendant agreed to deliver to plaintiff at the several stockyards specified a total of twenty-four hundred head of

cattle between April 18 and May 10, 1931. Plaintiff agreed to receive the cattle at the place of delivery, to furnish pasture for the cattle in the proportion of five acres per head, to supply salt and an abundance of water, to care for and return the cattle upon demand of defendant. Plaintiff agreed to pasture such cattle from April 18, until October 15, 1931. Defendant agreed to pay plaintiff for the pasturage the total sum of $17,777.50.

On May 9, 1931, the defendant Opp wired plaintiff:

"Llano, Texas, May 9, 1931. Charles Lips. DWR, 609 Minnesota Avenue, Kansas City, Kansas.

"Would like to get ten days extension on grass deal as I am trying to make some trades on cattle to put on your grass Stop Recent rains here assure all my cattle getting fat without going to Kansas wire me Menard, Texas. H. B. Opp."

On the same date the plaintiff Lips wired defendant:

"May 9, 1931, H. B. Opp, Menard, Texas.

"Telegram May 9 received Stop Have pastures ready and am waiting to receive and care for your cattle in accordance with contracts and holding pastures for you Stop Do not wish to change terms of contracts Stop If you wish pastures held for you for ten days without my trying to make new contracts to minimize your loss should you fail to occupy pastures as per contracts wire me to that effect and I will comply.          Chas. S. Lips."

Defendant never answered this telegram and did not at any time deliver any cattle to plaintiff under the contracts.

On May 18, 1931, the plaintiff sent the following telegram to the defendant:

"Receiving no answer to my wire to you of ninth of May nineteen hundred thirty-one and your pasture contracts having been breached expect to accept offer of five dollars per head for rental of pastures near Hymer and Matfield Green, Kansas, for pasture season.          Signed   Charles S. Lips."

The plaintiff received no answer to this telegram, nor did he receive any protest from defendant to the leasing the pasture on or after May 21 to other parties. Thereupon plaintiff on May 21, 1931, entered into similar contracts with other cattlemen whereby he agreed to pasture a total of 2,544 cattle on the same land designated in the contracts with defendant, and in which plaintiff agreed to water, salt and care for the cattle as in the contracts with defendant. Under these contracts plaintiff received the total sum of $11,880—being the best price he was able to obtain.

The plaintiff set up three causes of action in his petition, alleged the making of the three contracts with defendant, the failure of

defendant to deliver the cattle as agreed, and the making of the second set of contracts with other cattlemen to minimize the loss. Plaintiff alleged that the defendant's breach of the contract caused plaintiff to lose the difference between the $17,777.50 which defendant agreed to pay plaintiff for the pasture in the original contract, and the $11,880, actually received by plaintiff under the subsequent contracts with other cattlemen entered into by plaintiff to minimize the loss, and prayed judgment for the difference with interest.

Defendant filed a, demurrer to the petition which was overruled. Defendant filed an answer and a cross petition for damages for breach of an oral contract. A reply to the answer and cross petition was filed by plaintiff.

At the beginning of the trial defendant objected to the introduction of evidence for the reason the petition failed to state a cause of action. This objection was based on two grounds, (1) The plaintiff having leased the pasture to defendant until October 15, he could not relet the same to other persons before that time, and (2) there was no meeting of the minds of the parties to an essential part of the contracts, therefore they were incomplete and did not bind defendant.

The plaintiff testified to all the matters alleged in the petition. Plaintiff received judgment for the amount prayed for in the petition with interest from October 15, 1931. This appeal followed.

The brief submitted by counsel for defendant is devoted principally to a discussion of the measure of damages.

The cattle were to be delivered to plaintiff between April 18 and May 10, 1931. The cattle were not delivered within the time stated in the contract, and the telegram of plaintiff was not answered. The defendant having abandoned performance on his part, the plaintiff was justified in construing the conduct of defendant as a total repudiation of the contract.

In *Parker v. Russell*, 133 Mass. 74, the action was on a contract to support plaintiff for life, in consideration of the conveyance of land. Defendant did support plaintiff for five years and thereafter refused further aid or support.

The court stated that "if the breach has been such that the plaintiff has the right to treat the contract as absolutely and finally broken by the defendant, and he elects so to treat it, the damages are assessed as of a total breach of an entire contract. . . .

Such damages are not special or prospective damages, but are the damages naturally resulting from a total breach of the contract, and are suffered when the contract is broken, and are assessed as of that time. From the nature of the contract they include damages for not performing the contract in the future as well as in the past." (See McCormick on Damages, § 144.)

Clearly the plaintiff was entitled to sue for damages resulting from a total breach of the contract.

What is the measure of damages? The plaintiff was to pasture the cattle from April 18 until October 15, 1931. Was the plaintiff entitled to recover the difference between the stipulated rental and the rental value of the pasture from April 18 until October 15? If so, we find no evidence in the record as to the value of the pasture for such time. Or was the measure of damages the difference between the stipulated rental, and the amount received on the subsequent contracts from other parties?

In an ordinary lease where the lessee repudiates or abandons his lease the measure of the lessor's damages for the breach of contract is the difference between the rent stipulated in the lease and the sum for which the premises are rented to other parties for the remainder of the term. (*Wilson v. National Refining Co.*, 126 Kan. 139, 266 Pac. 941.) And this seems to be the general rule. (*In Re Mullings Clothing Co.*, 252 Fed. 667; *People v. St. Nicholas Bank*, 151 N. Y. 592, 45 N. E. 1129.)

The law will not permit a person who has suffered an injury by the breach of a contract to recover for damages which he might have averted. The rule of avoidable consequences is thus stated in 1 Sedgwick on Damages (9th ed.) § 203:

"The application of the doctrine of contributory negligence and of that of avoidable consequences often produce results that closely resemble each other; but there is a distinction between the two. Contributory negligence defeats the action itself. The rule of avoidable consequences can never produce this result as it cannot be applied until a cause of action, which in any event will entitle the party injured to nominal damages, has arisen. The rule, therefore, is really a rule of limitation upon the plaintiff's recovery. Nor is it properly to be regarded as a species of mitigation of damages. This relates to the defendant and generally to the character of his acts; *e. g.,* that a tort was not malicious; that, after committing a trespass, he repaired the wrong as far as possible."

. See *Rock v. Vandine*, 106 Kan. 588, 189 Pac. 157; *Holly v. City of Neodesha*, 88 Kan. 102, 127 Pac. 616; *Severini v. Sutter-Butte Canal Co.*, 59 Cal. App. 154, 210 Pac. 49.

The rule of avoidable consequences is frequently described as a rule which imposes a duty to minimize damages. In *Lawson v. Callaway*, 131 Kan. 789, 293 Pac. 503, it was held: '

"Where a tenant under contract to pay rent on real property abandons the property and notifies the landlord of that abandonment, it is the duty of the landlord to make a reasonable effort to secure a new tenant for the property and obtain rent therefrom before he can recover rent from the old tenant under the contract."

In the Callaway case the Kansas cases are reviewed at length. In the case at bar the plaintiff exercised the diligence of a reasonably prudent man to put himself in as good position as he would have been if the contract had not been violated.

It is contended that the contracts sued on are agistment contracts and that "as such are subject to the ordinary rule of an ordinary bailment or service contract." Counsel have not cited nor have we been able to find the case of an agistment contract breached by the failure to deliver cattle to the pasture as agreed.

However, there are cases involving breaches of various kinds of contracts somewhat analogous to the contracts in question, where the correct measure of damages was held to be the difference between the sum called for by the contract and the amount actually realized, or that could reasonably have been realized, from the services or instrumentality in question under contracts made to minimize the loss.

Thus, in *Barron G. Collier, Inc., v. Kindy*, 146 Minn. 279, 178 N. W. 584, the rule was held applicable in the case of breach of a contract whereby plaintiff was to display in public buses certain advertising to be furnished by defendant, the latter agreeing to pay a certain sum per month for the service. There defendant breached. the contract by failing to furnish the advertising matter to be placed in the buses and to make the payments agreed upon. The court said:

"Defendant contends that the court erred in ordering judgment for the full contract price of the advertising.

"This contract is much like a contract of employment and it is governed by similar principles. (*McDermott v. De Meridor Co.,* 80 N. J. Law 67, 76 Atl. 331.) If the Kissam Company continued during the period of the contract, ready and willing to perform, then the measure of damages is prima facie the contract price, less the cost of furnishing the service. (*Stumpf v. Merz,* 50 Misc. Rep. 543, 99 N. Y. Supp. 337; *Ware Bros. Co. v. Cortland C. & C. Co.,* 192 N. Y. 439, 85 N. E. 666, 22 L. R. A., n. s., 272, 127 Am. St. Rep. 914.)

"In this case the testimony is that it would have cost nothing to complete the contract; that the expenses of operation of plaintiff's business would be the same whether this advertising space were used or not.

"If plaintiff obtained any other compensation from the space covered by defendant's contract, or if by the exercise of reasonable diligence it might have done so, defendant was entitled to have such amount deducted from the contract price. (*Peck & Co. v. Roofing & C. Co.,* 96 Mo. App. 212, 70 S. W. 169.) But the burden as to such matter was on the defendant. (*Horn v. Western Land Ass'n,* 22 Minn. 233; *Beissel v. Vermillion Farmers' Elev. Co.,* 102 Minn. 229, 113 N. W. 575, 12 L. R. A., n. s., 403; *Schommer v. Flour City O. I. Works,* 129 Minn. 244, 152 N. W. 535; Sutherland, Damages, Secs. 713, 693.)" (p. 281.)

Another case dealing with the measure of damages for breach of an advertising contract is *Tradesman Co. v. Superior Mfg. Co.,* 147 Mich. 702, 111 N. W. 343, 344. There, the parties made a contract by which plaintiff was to publish a weekly advertisement for defendant on a certain page of its magazine, and defendant agreed to pay a certain sum therefor. After the contract had been partly performed, defendant withdrew the advertisement and refused to further recognize the contract. In discussing the measure of damages, the court held:

"It is also contended that the court erred in determining the measure of damages. As we have heretofore held, a party to an executory contract may stop performance by the other party by a distinct, unequivocal and absolute renunciation thereof, and thereafter the right of such other party is limited to a recovery of damages for the breach of the contract involved. (*Wigent v. Marrs,* 130 Mich. 609. See, also, *William E. Peck & Co. v. Corrugating Co.,* 96 Mo. App. 212; *D. O. Hanyes & Co. v. Nye,* 185 Mass. 507.) It was the duty of plaintiff, however, upon notice of renunciation of the contract by defendant, to use reasonable efforts to obtain other advertisements at the best price attainable, and the measure of damages would be the contract price less the amount obtained, or which might have been obtained for such other advertisements. (*Hopkins v. Sanford,* 41 Mich. 243; *William E. Peck & Co. v. Corrugating Co., supra.*)" (p. 705.)

In *Mimms v. Betts Co.,* 9 Ga. App. 718, 72 S. E. 271, 272, the contract, for breach of which the action was brought, provided that plaintiff would cut and haul logs for defendant, and that he should use for that purpose as many teams, not exceeding seven, as he should be able to purchase. When the contract was partially completed, defendant breached the contract by refusing to allow plaintiff to do any more hauling. In discussing the damages to which plaintiff was entitled because of the breach, the court, in its opinion, said:

"The defendant, having breached the contract in June by refusing to allow the plaintiff any longer to perform, became liable for such damages as arose 'naturally and according to the usual course of things from the breach, and such as the parties contemplated when the contract was made, as the probable result of its breach.' (Civil Code, 1910, section 4395.) Under the particular

facts in this case, the plaintiff would primarily be entitled to recover as damages the gross amount he would have earned with his teams during the remainder of the period throughout which the contract .was to continue, less such expenses as he was saved by reason of not being required to perform the contract. However, upon the defendant's breach of the contract, the plaintiff became duty bound to lessen the,damages, as far as practicable, by the use of ordinary care and diligence. (Civil Code, 1910, section 4398.) It consequently became his duty to make the deduction to which the defendant would be entitled under the measure of damages stated above, as large as possible; that is, it was his duty to cut out as much of the expenses as possible, or else to make the property which was causing the expenses to earn an income, as an offset against the damages. If it were not for this duty imposed on the plaintiff of lessening damages, he might have kept his teams idle until the end of the year, and have held the defendant liable for the full amount he would have earned by performing the contract, for it costs just as much to keep idle teams as it does to keep working teams. If, by the exercise of ordinary care and diligence, the plaintiff could have employed his teams profitably in other work, it was his duty to do so." (p. 720.)

The rule that the measure of damages is the difference between the contract price and the amount which might have been, or was, realized from other contracts made to minimize the loss, is most frequently applied to cases in which the contract is purely one for personal services. But the duty to minimize damages, and the consequent rule as to the measure of damages, illustrated in the cases heretofore quoted, would, we think, apply to the case at bar.

As stated, defendant lays stress on the fact that the contracts sued on were not leases, but were agistment contracts, and says that although the evidence "supports damages growing out of and being the result of an ordinary lease for land" it does not support damages for breach of an agistment contract.

Much emphasis has been put on that feature of the contract which calls for certain services on plaintiff's part. We believe the emphasis has been misplaced. While it is true that the contracts in question call for some personal services in connection with the pasturing of the cattle, still from the nature of the contracts it seems clear that personal service was incidental, as in the case of handling a ship under charter. The principal consideration for the promised payment of money was the furnishing of the pastures—the grass and water that made the land pasture land.

These contracts were only incidentally contracts for personal service. While technically not leases, they are similar to leases. The use of the land was the all-important consideration. The contracts provided that appellee should receive the cattle, furnish pasture for

them, supply salt and water, and care for and return the cattle. Of course, the main object of an agistment contract is the furnishing of pasture land on which the cattle might graze and gain weight. The principal service contemplated by the contracts was simply a duty on plaintiff's part to see that the cattle did not escape, or die from lack of food and water. It is undisputed that both the contracts with defendant and the contracts later made with third persons to minimize the loss, called for the same pastures and the identical services on plaintiff's part, and involved substantially the same number of cattle to be pastured for substantially the same length of time. The trial court had the right to infer from such facts that the expense to plaintiff under both sets of contracts would be the same.

From the facts in evidence, the court had the right to, and did, draw the inferences: (1) That plaintiff suffered a loss by reason of defendant's breach of his contracts; (2) that that loss (whatever its amount) was minimized or lessened by the receipt of the amounts called for under the second set of contracts; and (3) that plaintiff would have been $5,897.50 richer had defendant carried out the original contracts, because under those contracts plaintiff would have received $17,777.50, while for the same pastures and the substantially identical services, under the contracts made with other persons after defendant's breach, he was able to obtain only $11,880.

The evidence indisputably showed the making of the contracts sued upon; their breach by defendant; the making of other contracts to minimize the loss, involving the same pastures and services as in the broken contracts, and representing the greatest income plaintiff was reasonably able to obtain for his land and services during the term stipulated in the broken contracts; and the difference between the amount defendant agreed to pay under the original contracts and the amount received under the second set of contracts. This difference was the correct measure of damages.

The judgment is affirmed.