## AMOS BOBB v. HARVEY BANCROFT, *et al.*

1. CONTRACT—*Agreement, between Debtors and Creditors; Construction of.*
A firm composed of four members was indebted to several parties. The
creditors signed an agreement which commenced with a recitation that
they made with the members of the partnership "the arrangement fol-
lowing for the settlement of their claims respectively against said part-
nership and its members." It then provided that the partners should
at once transfer to a trustee named certain specified property in trust for
said creditors; that the trustee should proceed without delay to convert
the same into money, and after paying the expenses of the trust, pay the
same *pro rata* to the creditors "until the satisfaction of their claims," and
the residue return to the partners; also that one of the firm should execute
a mortgage on certain specified property to said trustee in trust for the
creditors, conditioned that he would in three equal annual payments pay
said creditors, or said trustee for said creditors, "any balance of their
said claims which the said other property and assets and the proceeds
thereof should be insufficient to pay," and then closed with this stipula-
tion: "The foregoing conditions being complied with, we agree to extend
the time of payment of our claims one-third in one year, one third in
two years, and one-third in three years:" *Held*, That the firm having
performed all the conditions prescribed on its part was entitled to claim
from the creditors *simply an extension of the time of payment of its indebted-
ness*, and that there was no agreement, express or implied, on the part
of the creditors to release any of the firm, or to look first to the property
in the hands of the trustee, and secondly only to the mortgage security
for the satisfaction of their claims; and further, that three years having
elapsed from the date of the agreement any creditor could maintain his
action against the firm for the unpaid portion of his claim.

2. WRITTEN CONTRACT; *Rules of Construction.* Where a contract is clear
and unambigous in its terms, it is the best evidence of the intention and
agreement of the parties, and an allegation in a pleading thereon that
the parties by that agreement intended something different from the plain
import of its language may, at least when there is no claim of mistake,
fraud, or imposition, be disregarded.

3. PLEADING; *Sufficiency of Answer.* A defense in an answer to an action
on a promissory note, which alleges that the plaintiff has received from
a certain trustee large sums of money in part payment of the note, and
in excess of the amounts credited, and that the amount thus paid is un-
known to defendants and known only to the trustee and the plaintiff,
should be held good on demurrer, although no amount thus paid is
specified.

4. RIGHT OF ACTION, *not Restricted.* A party holding the note of a firm,
for whose payment and security such provision has been made as specified

in the agreement heretofore described, may maintain an action thereon, without first returning the money received from the trustee and not credited on the note, or releasing, assigning and returning all right, title and interest he may have in the property transferred to such trustee.

5. ————— The fact that the property conveyed to such trustee was and is of value sufficient to pay all the expenses of the trust, as well as all the indebtedness of the firm, constitutes no defense to an action on such indebtedness.

### *Error from Lyon District Court.*

AMOS BOBB, as plaintiff, brought suit against *Harvey Bancroft,* Carlos N. Bancroft, Robert E. Sheldon, and *Robert D. McCarter,* partners as Bancroft Bros. & Co., as defendants, declaring against the defendants on a promissory note executed by the defendants, in their partnership name, " Bancroft Bros. & Co." *Harvey Bancroft* and *McCarter* alone were served, and they answered, setting up nine defenses. These defenses, and the proceedings thereon, so far as material to the questions decided are sufficiently stated in the opinion of the court. Judgment was given for defendants, at the September Term 1873 of the district court, and *Bobb* brings the case here on error.

Another action was brought by *Isaac M. Bobb,* as plaintiff, against the same defendants, and involving the same questions. The two actions were heard and decided in this court together.

*Orrin Miller,* for plaintiff.

*R. M. Ruggles,* for defendants.

The opinion of the court was delivered by

BREWER, J.: Plaintiff in error, plaintiff below, brought his action against the defendants upon a promissory note. The petition was in the ordinary short form. The defendants, or rather the two of them who were served, filed an answer with several defenses. To these a demurrer was filed, which was overruled as to the second, third, fourth, sixth and seventh defenses. To reverse this ruling on the demurrer plaintiff brings this proceeding in error.

The second defense which presents the substantial merits of the controversy is as follows. It appears from the petition, it should first be stated, that the defendants were partners under the firm-name of Bancroft Bros. & Co.; that the note sued on was a partnership note, dated Dec. 28th, 1868, and due in one year. Now the second defense in the answer alleges that this note was the only indebtedness of the defendants to the plaintiff; that in March, 1870, the firm entered into an agreement with all their creditors, including the plaintiff, which agreement is then recited in full. It is this in substance: The creditors make with the members of the partnership "the arrangement following for the settlement of their claims respectively against said partnership and its members." The partners shall at once transfer to a trustee certain specified property in trust for said creditors. The trustee shall proceed without delay to convert the same into money, and, after paying the expenses of the trust, pay the same *pro rata* to the creditors, "until the satisfaction of their claims," and the residue return to the partners. Harvey Bancroft, one of the firm, shall also at once execute a mortgage on certain specified property to said trustee in trust for said creditors, conditioned that he will in three equal annual payments pay said creditors or said trustees for said creditors "any balance of their said claims which the said other property and assets, and the proceeds thereof, shall be insufficient to pay;" and then follows this stipulation: "The foregoing conditions being complied with, we agree to extend the time of the payment of our claims, one-third in one year, one-third in two years, and one-third in three years," which agreement was signed by all the creditors. The defense also alleges that defendants conveyed the property to the trustee as required, that the trustee received the property and accepted the trust, and that Harvey Bancroft executed the mortgage as stipulated in the agreement. The question then arises as to the effect of this agreement. Was it simply an extension of time by the creditors, or did it change the form of the debt, and the person of the debtor? Counsel for de-

fendant in error claim that the intention of the parties, as expressed by the instrument, was—

"1st, That the defendants should convey certain property specifically described in the instrument to the trustee therein named.

"2d, That the defendant Harvey Bancroft and his wife should make and deliver to this trustee a mortgage upon certain property mentioned and described, which was to be conditioned that the defendant Harvey Bancroft should pay *all* of the indebtedness of the partnership which the property transferred to the trustee should be insufficient to pay.

"3d, That the creditors (including plaintiff in error,) *would thereupon release their several claims as against the defendants respectively, and look only to the trust fund in the hands of the trustee for the payment of their several claims, and to Harvey Bancroft for any balance that might be due to them on their claims after the trust fund had been exhausted in the payment of their claims.*

"4th, That the trustee should dispose of the property thus to be transferred to him without delay, and apply the proceeds *pro rata* to the payment of the various claims of their creditors until such claims should be satisfied.

"5th, That in case this trust fund should be insufficient to pay the full amount due to each creditor out of it, the creditors should postpone the payment of this deficiency so that Harvey Bancroft would be obliged only to pay one-third of it in one year, one-third in two years, and the remaining third in three years."

Counsel also alleges in this second defense that such was the understanding and agreement of the parties. The contract speaks for itself. The parties have reduced their agreement to writing, and that writing is the best evidence of their agreement. True, if the contract is fairly susceptible of more than one construction, that which is alleged to be the true construction and the intention of the parties will be taken to be correct when the question arises on demurrer. (*Craft v. Bent,* 8 Kas., 328.) But this rule does not apply when the contract is clear and unequivocal. Then an allegation that so and so was the intention and understanding of the parties, will be held for naught, as against the obvious import of the language. Now we fail to see in this contract anything

which directly or by implication contains any such stipulation as appears in the third paragraph of the quotation from counsel's brief. There is certainly no express stipulation to release any one, or to look to any particular fund or funds for payment. On the contrary, the simple agreement of the creditors is, to give an extension of one, two and three years. That which the debtors were to do is plainly stated, and then as plainly is it said, "the foregoing conditions being complied with, we agree to extend the time of the payment of our claims," etc. That which each party was to do appears as clearly and plainly as language can make it. The one was to secure, the other extend.

Counsel lays some stress on the use of the word "settlement" in the first clause of the agreement, which is as follows: "The undersigned, creditors of the late co-partnership of Bancroft Bros. & Co., of Columbus, Ohio, make with the members of said partnership the arrangement following for the *settlement* of their claims respectively against said partnership and its said members;" and argues, that as it could not mean arrangement of accounts so as to ascertain the balance due, it must mean payment in full. The word "settlement" is not necessarily used with either signification. There would be no impropriety in its use in reference to just such a transaction as is disclosed here. The creditor extends time and obtains security. He may properly say he has thus settled his claim. He has made a new arrangement in reference to it. But whatever force the word "settlement" might have, standing by itself, it is here qualified by preceding language. The creditors make "the *arrangement following* for the settlement," etc. This refers us to the stipulations following to ascertain what kind of a settlement they did make. It is to them we must look to determine the nature of the agreement and the rights of the parties.

Counsel claims that such a construction makes the contract strange, harsh and inequitable. It does not seem so. The defendants were in debt. Some of those debts were due. As to the others we are not advised. They had some property

which was liable for those debts. It was their duty to pay them, and to use their property therefor. To convert property into money by judicial proceedings always involves considerable waste. They surrendered certain property absolutely, and gave other as security, whether adequate or not we are not advised, and obtained a considerable extension of the time of payment. This is certainly no small consideration to men in business. The contract might or might not be a generous one on the part of the creditors. If the value of the property surrendered and mortgaged was but a small per cent. of the indebtedness, then the contract was a very liberal one; if greater than the indebtedness, not so much so. But it is useless to speculate as to which party profited by the agreement. It is enough for us that both parties entered into it, and are bound by its terms.

We think the contract clear and unambiguous; that the claim sued on was not extinguished or released as to any of the debtors; that the only stipulation of the creditors was to grant an extension; and as this action was not commenced until more than three years after the date of the agreement, nothing in this second defense discloses any defense, and the demurrer to it should have been sustained.

In the third defense of the defendants' answer they set up that by the terms of the written agreement set out in the second defense of their answer, all of the creditors of the defendants, including the plaintiff, Amos Bobb, expressly agreed with defendants that upon defendants complying with the terms of said agreement that the creditors (parties to said agreement) would thereupon cause William Jamison, the trustee mentioned in said agreement, to sell and dispose of all the property, notes and accounts, and all the merchandise assigned to him, and to pay the proceeds thereof *pro rata* to all of said creditors, including the plaintiffs; and that the plaintiff and the other creditors agreed to accept and receive any and all such *pro rata* payments and apply the same as a *full payment* to the amount of such *pro rata* payments; and that said creditors, including the plaintiff, would in no event

and under no circumstances attempt to enforce the payment or collection of their claims until after Jamison should have sold *all* of the assets transferred to him, and applied the proceeds of such sales *pro rata* to the payment of all said creditors; and that the said creditors, including the plaintiff, have "failed, neglected and refused to have or compel the said Jamison to sell and dispose" of the assigned property, or collect the bills and accounts and apply the proceeds thereof *pro rata* to the payment of said claims, and ·that said Jamison has wholly failed, neglected and refused to·convert said property into money and apply the proceeds upon said claims, and all this without any fault on the part of the defendants or either of them. This, it will be seen, simply sets up another statement of the intention of the parties to the agreement previously recited, an intention of which we fail to gather any intimation from the agreement itself. Surely, we search in vain to find in that instrument any *express* agreement to wait till the trustee has fully executed his trust, or to supervise his conduct and compel him to execute the trust, or even to be responsible for his negligence, delay or misconduct. Whatever implications there might be, there is nothing expressed. The demurrer was improperly overruled.

In their fourth defense the defendants allege that the plaintiff has received from Jamison large sums of money as *pro rata* payments on the note in addition to the amounts for which the plaintiff has given credit to the defendants, and that the plaintiff has neglected and refused to credit such payments upon the note. The plea further alleges that the amounts of such payments are wholly and solely within the knowledge of the plaintiff and Jamison. We see no objection to this defense, at least none that can be considered on a demurrer. It alleges partial payments in excess of those admitted, and if true, reduces the amount to be recovered. Because the defendants are ignorant of the amount actually paid they are not thereby deprived of the benefit of such payments, or the right to prove as large an amount as possible. The demurrer to this count was properly overruled.

9—13 KAS.

The sixth defense in the defendants' answer alleges that the plaintiff must *first* deliver and return to the defendants all of the money that he has received from Jamison, and not credited upon the note, and also *release, assign or return* to the defendants all right, title and claim or interest the plaintiff may have in or to any of the property assigned by the defendants to Jamison on the 11th of March, 1870. Or in other words the claim is, that a creditor having a note which is secured must, before he can maintain an action at law on the note, release and return the security. We do not so understand the law. The creditor may ignore the security altogether and sue upon his note. Of course, whatever money has been realized from the security is a credit on the note; and if after the note, or the judgment rendered thereon, has been fully paid, the creditor still holds any security, he may be compelled to release and return it. Perhaps also in some cases equity might interfere and compel restitution before or at the time of payment, but we doubt whether equity would ever make the release of the security the prerequisite to an action on the debt. The demurrer was improperly overruled.

The seventh plea of the defendants alleges that the property transferred and delivered by the defendants to Jamison was and is sufficient in *value* to have paid any and all of the indebtedness of the firm of Bancroft Bros. & Co., and also the expenses of carrying out the terms and conditions of the assignment. We need hardly comment upon this defense. For reasons already fully suggested it was insufficient, and the demurrer to it ought to have been sustained.

The judgment of the district court in overruling the demurrer to the second, third, sixth, and seventh defenses set up in the answer, will be reversed; and in overruling the demurrer to the fourth defense will be affirmed. The costs of this court will be divided.

It is understood that the same questions are in the succeeding case of Israel M. Bobb against same defendants, and the same order will be made in that as in this.

All the Justices concurring.