## C. F. DRAKE v. THE FIRST NATIONAL BANK OF FORT SCOTT.

1. REFORMATION OF CONTRACT; *Pleading.* Where a plaintiff commences his action upon a written contract, and does not ask to have the contract reformed, and does not allege any grounds of accident, surprise or mistake authorizing the reformation of the contract, nor any matters that could possibly change the meaning of its terms, *held,* that allegations of what the parties intended or desired, or why they made the contract, or why they made it as it was made, and what the parties understood and agreed to be its "legal purport and effect," are irrelevant and redundant—mere surplusage.

2. —————— *Amendment.* In such a case, the trial court may, in its discretion, order the plaintiff to so amend his petition as to strike out these irrelevant and redundant allegations.

3. ———— *Dismissal of Action.*  In such a case, where the plaintiff fails and refuses to so amend his petition, the court may, in its discretion, dismiss the plaintiff's action.

*Error from Bourbon District Court.*

THE opinion contains a sufficient statement of the case. The plaintiff *Drake* brings here for reversal certain orders of the court below, made in his action against *The First National Bank of Fort Scott*, at the September Term, 1883.

*A. A. Harris*, for plaintiff in error.

*Ware & Ware*, and *J. D. McCleverty*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: On April 4, 1883, an action was pending in the district court of Bourbon county, wherein C. F. Drake was the plaintiff and the First National Bank of Fort Scott, Kansas, was the defendant. On that day the defendant filed two motions, one asking the court to require the plaintiff to amend his amended petition so as to make it more definite and certain in certain particulars, and the other asking the court to require the plaintiff to further amend such petition by striking out certain alleged surplus and redundant matters therein contained. On May 23, 1883, these motions were heard, and both of them were partially sustained and partially overruled, and the plaintiff was required to amend his amended petition so as to make it correspond to the orders of the court made on said motions, and sixty days were given him within which to so amend. The plaintiff, however, did not amend in any particular, and for that reason the court below, at the September term, 1883, dismissed his action. The orders of the court below partially sustaining the defendant's motions and dismissing the plaintiff's action were duly excepted to by the plaintiff, and to reverse these orders the plaintiff, as plaintiff in error, on August 12, 1884, brought the case to this court.

It is conceded by the plaintiff that if the motions were properly sustained, the court below committed no error in dismiss-

ing his action; but it is claimed by him that the motions were erroneously sustained. The plaintiff, in his brief in this court, states that the only question now submitted for determination is, whether or not the said motions were rightfully sustained. The defendant, however, does not admit that this is the only question, but suggests that there are still others to be determined. We shall consider only the question presented by the plaintiff; for even upon that question we think the decision of this court must be in favor of the defendant. This question, however, involves several others, some of which we do not think will require any consideration. For instance, we do not think that it is necessary to enter into any consideration as to whether the court below erred, or not, in requiring the plaintiff to so amend his amended petition as to make it more definite and certain in certain particulars; for a decision of the other questions involved in the case will require an affirmance of the final decision of the court below, in whatever way this question of definiteness or certainty in the petition, or want of the same, might be decided; and besides, the consideration of this question would involve the consideration of many difficult and intricate questions which may never again arise. The principal question which we shall consider is, whether the court below erred in requiring the plaintiff to amend his amended petition by striking out certain alleged surplus and redundant matters.

The plaintiff's action is founded upon the following instruments in writing, to wit:

"$5,500.        THE FIRST NATIONAL BANK, }
                FORT SCOTT, KANSAS, Oct. 18, 1880. }

"C. F. Drake has deposited in this bank fifty-five hundred dollars, payable to the order of A. A. Harris, trustee, on return of this certificate properly indorsed.

(Signed)        C. F. MARTIN, *Assistant Cashier*."

"When the First National Bank of Fort Scott, Kansas, at any time after November 1, 1880, and up to December 1, 1880, shall convey by good and sufficient quitclaim deed or deeds, free and clear of all tax liens and incumbrances, including the taxes of 1880, all the real estate included in the

real-estate account of said bank, and the same referred to in an agreement made September 25, 1880, by and between W. Chenault and C. F. Drake, then A. A. Harris, trustee, shall indorse the same to said bank.

"But if said bank shall not properly and legally execute and deliver such deed or deeds as is herein mentioned, as to such real estate, then said Harris, as trustee, shall indorse this certificate and deliver the same to C. F. Drake, who in that event shall be authorized to receive the money thereon.

"This stipulation and agreement consented to by said Drake, said Chenault, and said bank, all of whom agree to carry out its provisions so far as the same may devolve upon them respectively. This, October 18, 1880.

(Signed)   C. H. OSBUN, *Cashier.*
      W. CHENAULT.
      C. F. DRAKE."

The plaintiff, in his amended petition, alleges in substance that at the time when these instruments were executed W. Chenault was the president of the First National Bank, C. H. Osbun was the cashier, and C. F. Martin was the assistant cashier; that the second instrument was attached to the first, and was a part thereof, or in other words, that the two instruments in effect constituted only one instrument; that on December 1, 1880, the real estate therein mentioned was of the value of $9,500; "that on the first day of December, 1880, and prior and subsequent thereto, he [the plaintiff] demanded of the defendant that it execute and deliver to him the deed or deeds to said lands and real estate, as in said instrument agreed, and that said Harris, as trustee, offered to indorse the said certificate of deposit to the defendant; that defendant could have made the deed or deeds as agreed, but, wholly disregarding its obligation and agreement, it failed and refused so to do, and conveyed the same to other and different parties. Wherefore, the plaintiff was damaged in the sum of $4,000, for which he prays judgment against the defendant."

Nothing is said in the plaintiff's pleadings as to what had become of the certificate of deposit—as to whether it had been assigned, or not; or collected, or not; or who held it or owned it; or whether at the time when the bank sold and conveyed

the land in question to other parties it was then in such a condition or in such hands that it could have been assigned or delivered by either Harris or Drake to the bank. The plaintiff has carefully refrained from alleging that he was the owner or holder of the certificate of deposit, or even that Harris still held it; but for the purposes of this case we shall assume that after the bank's failure and refusal to execute the deed or deeds to Drake, Harris indorsed and delivered the certificate of deposit with the other instrument to Drake, and that the two instruments still remain in Drake's possession, unsatisfied, uncollected, and owned by him.

The supposed irrelevant and redundant matter contained in the petition is as follows:

"At that time there were some taxes, the exact amount of which is not known to the plaintiff, due on said lands and real estate, and which were a lien thereon. The defendant desired an opportunity of paying or compromising said taxes before it should finally make the deed or deeds to plaintiff, and it was agreed by and between plaintiff and defendant that the defendant should have such opportunity. At that time the plaintiff had on deposit some eight or nine thousand dollars of his money with the defendant. The parties mutually desired some evidence that each would perform his and its part of the contract of sale, and it was mutually agreed that $5,500 of the money which plaintiff had on deposit with the defendant should be placed to the credit of A. A. Harris, as trustee, to remain with the defendant according to the terms of a certain certificate of deposit then issued and executed by the defendant for that purpose, . . . the plaintiff giving to the defendant his check for said amount of $5,500. . . Plaintiff says that said instrument and agreement was intended by and between the parties thereto to be an agreement and contract on the part of the defendant to convey to the plaintiff all lands and real estate therein referred to, on or before December 1, 1880; and such was understood and agreed to be its legal purport and effect by the plaintiff and defendant at the time of its execution."

This matter is evidently redundant and irrelevant—mere surplusage. The petition is no better with it than without it, and the court below did not err in ordering it to be stricken

out. The plaintiff does not ask to have the written instruments, or either of them, or the contract embodied therein, reformed, and alleges no grounds of accident, or surprise, or mistake, authorizing the reformation of such contract, nor any matters that could possibly change the meaning of its terms in any respect whatever. The parts stricken out are merely averments of non-essential facts of what the parties intended and desired, and why they made the contract, and why they made it as it was made, and what the parties understood and agreed to be its "legal purport and effect." Such averments cannot change the terms of the written contract, nor affect the rights of the parties thereunder. The rights of the parties are governed by the terms of the written contract. The court, however, in its discretion might have permitted these averments to remain as a part of the petition; but also in its discretion it had a right to order them to be stricken out; and as it had such right and made such order, and as the plaintiff failed to obey the order, the court undoubtedly had the right to dismiss the action for that reason, as it did. The order requiring the plaintiff to strike out these irrevelant matters was a separate and distinct order, and the plaintiff could have obeyed it without obeying any other order of the court. But the plaintiff failed and refused to obey this order, or any part thereof, and failed and refused to obey all orders; and for that reason his case was dismissed, and he must now abide the consequences.

The judgment of the court below dismissing the plaintiff's action will be affirmed.

All the Justices concurring.