No. 28,087.

ULVA HUDKINS WILSON, *Appellee*, v. THE NATIONAL REFINING
COMPANY, *Appellant*.

(266 Pac. 941.)

Opinion filed May 5, 1928.

*William S. Norris,* of Salina, *I. J. Ringolsky, M. L. Friedman* and *W. G. Boatright,* all of Kansas City, Mo., for the appellant.

*J. F. Corder, C. W. Burch, B. I. Litowich* and *La Rue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the lessor against the lessee to recover damages for the abandonment of the leased premises and refusal to pay the rent for the last two years and more of a five-year period covered by the lease. The defendant answered, admitting the execution of the lease and the occupancy of the premises thereunder for nearly three years, but alleging that the lease was surrendered by defendant and accepted by plaintiff; that the lease was for a specific purpose prevented by law; that the action was prematurely brought; and that the defendant had a right to credit for an exclusive option. The defendant also counterclaimed for one month's rent paid by mistake. The demurrer of plaintiff to the answer was sustained, and defendant appeals.

In the first place, it is claimed by appellant that this action is prematurely brought, inasmuch as it was commenced five months before the five-year period covered by the lease expired. The determination of this question, which, with other questions, was raised by demurrer to the petition, will effectually dispose of some of the other questions discussed in the briefs of both parties. Where there is a breach of the terms of the lease and an abandonment of the leased premises, as in this case, the lessor, if he does not accept the surrender of the lease, has several different remedies.

"Where there has been a renunciation of an executory contract by one party, the other party has a right to elect between the following remedies: (1) To rescind the contract and pursue the remedies based on such a rescission. (2) To treat the contract as still binding and wait until the time arrives for its performance, and at such time to bring an action on the contract for breach. (3) To treat the renunciation as an immediate breach and sue at once for any damages he may have sustained." (13 C. J. 653.)

The petition in this case set out just what was done by each party, including the notice of renunciation by the defendant, abandonment of the premises, notice by plaintiff that defendant would be held responsible to the end of the term, a copy of the lease, the reletting of the premises to the best advantage possible, and the giving of credit to defendant for such rent to the end of the term, and concluding that plaintiff "has been damaged in the sum of ten hundred eighty dollars, with legal interest," etc.

The appellant's contention that the action is prematurely brought depends upon whether the plaintiff's petition is one to collect the rent under the terms of the lease, which was payable monthly in advance, or one for damages for the breach of a contract. If it is for the collection of rent, of course it is prematurely brought as far as the last five months are concerned; but the allegations of the petition show plainly that it is to recover damages for breach of contract, even if the damages are measured by the amount of rent due under the lease. If it is for damages, it is not prematurely brought. Such an action can be commenced immediately upon the breach and abandonment and covers the damages to the end of the term covered by the lease.

"Where a party bound by an executory contract repudiates his obligation before the time for performance, the promisee has, according to the great weight of authority, an option to treat the contract as ended so far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach. The rule is the same whether the contract is wholly executory or has been partially executed." (13 C. J. 651.)

Appellant contends that by the reletting of the premises by the lessor after the surrender of the lease by the lessee, as shown by the petition, the surrender of the lease was accepted by the owner and the defendant was thereby relieved from further liability thereunder. Cases are cited where this is the rule, particularly where eviction has been had or some other steps taken to completely exclude the lessee, which are inconsistent with the theory of abandonment. Appellant points only to the fact of reletting. The lessor in this case might have permitted the property to remain unoccupied and claimed the entire amount of rent due under the contract as damages for the breach; but if he does reenter and occupy or relet the property, it is his duty to reduce the damages as much as can reasonably be done. (40 A. L. R. 190, 197.) Under no circumstances does the reletting, in and of itself, amount to a consent to the surrender or an acceptance of the surrender.

"Surrender by a tenant must have the consent of his landlord in order that the tenant may be discharged from liability to pay rent.

"Consent of the landlord is not implied from the mere fact of a reletting, or from failure to notify the tenant of a reletting, and notice to the tenant of a reletting is not essential in order to prevent surrender by operation of law." (*Hoke v. Williamson,* 98 Kan. 580, syl. ¶¶ 1, 2, 158 Pac. 1115.)

The case of *Engstrom v. Tyler,* 46 Kan. 317, 26 Pac. 735, cited by appellant, was a suit for rent unpaid, and the abandonment, surrender, and acceptance are all set up in the answer with such allegations and statements as to imply an acceptance of the surrender in addition to reletting—among other statements, the collecting and retaining the rents without allowing credit or accounting for them. The case at bar has no such elements in it. In this case it is urged that the reletting implied acceptance. We do not think so; neither do we think it was necessary to notify the lessee that the place was being relet. (*Brown v. Cairns,* 63 Kan. 584, 66 Pac. 639.)

Appellant argues that the lessee is excused from performance in this case because of the enactment of a city ordinance which caused the lessee to discontinue the use of the premises for the purposes intended. The lease itself does not show the intended use, unless inferentially from the following expression: "Together with the exclusive rights for the sale of gasoline and oils on the said lot and location." The property leased was a small room 19 by 11 feet in the front of a building on lot No. 80 on Seventh street in Salina. From the pleadings we learn that the defendant operated a curb pump in connection with the small room or office. About two years after the making of such lease the board of commissioners of the city of Salina enacted an ordinance prohibiting the use of curb pumps within the fire limits of the city, which included this location, and gave twelve months to remove the same. The defendant surrendered its lease and abandoned the premises shortly before the expiration of such period, and urges that it should not be held liable because of this ordinance, over which it had no control and which compelled an abandonment of the curb-pump business. In this connection it must be stated that no reservation is contained in the lease itself. We cannot concur in this claim that the lessee is excused by the impossibility of performance, notwithstanding the occurrence of the contingency was not within the control of the lessee except by providing against it in the lease. In *Drug Supply Co. v. Board of Administration,* 106 Kan. 256, 187 Pac. 701, a drug com-

pany contracted to furnish certain supplies, but discontinued because its creditors put it into the hands of a receiver, who sold the assets under an order of court. The court held this was not a defense to an action for damages for breach of the contract.

"An action for the breach of an agreement to find a purchaser for a tract of land at a fixed price, within a stated time, cannot be defeated by showing the impossibility of procuring such a purchaser." (*Hurless v. Wiley*, 91 Kan. 347, syl. ¶ 2, 137 Pac. 981.)

"The fact that the lands described in the memorandum were Indian lands held in trust for the allottees, who were members of the tribe of Pottawatomie Indians, and that under an act of congress and the terms of the trust patents issued for said lands, any conveyance or contract with reference thereto is declared to be absolutely null and void, will furnish no defense to an action for damages for breach of a contract by the defendant to sell and convey such lands." (*Hampe v. Sage*, 87 Kan. 536, syl. ¶ 3, 125 Pac. 53. See, also, *Carter v. Wilson*, 102 Kan. 200, 169 Pac. 1139; *Winfrey v. Automobile Co.*, 113 Kan. 343, 214 Pac. 781.)

"A tenant is not relieved from liability to pay rent by the fact that the premises were leased for the transaction of the liquor business exclusively, and after several years of enjoyment the sale of liquor became unlawful." (22 A. L. R. 819.)

But it is contended that the allegations of the answer show the exclusive and intended use, and the defendant should have been permitted to make such proof as a defense. That does not seem to be the rule in Kansas where the contract itself is clear and not ambiguous. There is nothing in the contract limiting or prescribing the use of the room rented. If the lessee could not use it for one purpose it had a wide field for the use of it otherwise.

"Where a contract is clear and unambiguous in its terms, it is the best evidence of the intention and agreement of the parties, and an allegation in a pleading thereon that the parties by that agreement intended something different from the plain import of its language, may, at least when there is no claim of mistake, fraud, or imposition, be disregarded." (*Bobb v. Bancroft*, 13 Kan. 123, syl. ¶ 2. See, also, *Drake v. National Bank*, 33 Kan. 634, 7 Pac. 219.)

Another point raised is the measure of damages, if any, to which the plaintiff may be entitled. Appellant quotes 35 C. J. 1195 to the effect that the measure is the difference between the rent stipulated in the lease and the actual value for the balance of the term. This same section further adds:

"In some cases it has been held that the lessor is entitled to recover the difference between the rent reserved and the amount for which he is able to relet the premises to a third person."

This appears to be the rule followed in Kansas.

"The measure of damage is the difference between the contract price for the premises as agreed upon, and the amount the plaintiff was able to realize out of the property after he was notified that the defendant did not intend to take the pasture." (*Post v. Davis,* 7 Kan. App. 217, syl. ¶ 2.)

In *Lawson v. Brokmann,* 116 Kan. 102, 226 Pac. 252, it was held that it was "the duty of the party wronged to do what he reasonably can to mitigate the damages."

"Where a party seeks redress for the wrong of another, the law requires that he shall do whatever he reasonably can, and improve all reasonable opportunities to avoid the consequences and to lessen the injury." (*Town Co. v. Leonard,* 46 Kan. 354, syl. ¶ 2, 26 Pac. 717. See, also, *Frick Co. v. Falk,* 50 Kan. 644, 32 Pac. 360; *Holly v. City of Neodesha,* 88 Kan. 102, 127 Pac. 616; *Hoke v. Williamson,* supra.)

It was held in *Atkinson v. Kirkpatrick,* 90 Kan. 515, 135 Pac. 579, that—

"It is a general rule of the law of damages, that, notwithstanding the fault of the other party, the one who is injured in person or property will not be permitted to recover damages which he might have averted by reasonable diligence." (Syl. ¶ 3.)

Such reasonable diligence does not require the one wronged to mitigate the damages to the amount of the full rental value, which, ordinarily, on short notice, might be quite impossible.

The counterclaim of the defendant for one month's rent paid by mistake would have been recoverable if the appellant's theory of surrender and acceptance had been adopted by the court, but on the other theory it would have been due plaintiff if it had not been paid; so the appellant is not injured, unless it be in the allowance of rent from the possible reletting, and the petition shows it was not rerented during that first month after abandonment.

The appellant claims to be entitled by way of allowance for the release of the exclusive privilege contained in the lease as applied to the whole lot. In the first place, the answer does not show any such financial benefit or advantage existed, and in the second place, the appellant is not in a position to claim privileges due it under the lease which it voluntarily surrendered because it desired to yield up and abandon those rights or privileges. It could have held to itself those privileges if it considered them valuable, or might possibly have sold or disposed of them to others, but it surrendered and abandoned them and should not now be permitted to claim them as legal rights. They are intangible and very different from the credit from reletting physical property.

The ruling of the trial court on the demurrers to the petition and the answer are affirmed.

BURCH, J., not sitting.