No. 43,706

RAY L. SMITH COMPANIES, INC., *Appellee,* v. ELDON MILLER, INC., *Appellant.*

(392 P. 2d 943)

Opinion filed June 6, 1964.

*L. J. Bond,* of El Dorado, and *James K. Logan,* of Lawrence, argued the cause, and *Robert M. Bond,* of El Dorado, and *Robert C. Casad,* of Lawrence, were with him on the brief for the appellant.

*O. J. Connell, Jr.,* of El Dorado, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action by plaintiff lessor against defendant lessee to recover the balance due under the terms of a written lease. Defendant has appealed from an adverse judgment.

On March 1, 1955, the parties entered into a 20-year lease by the terms of which defendant agreed to pay the sum of $64,800 in 240 monthly installments of $270 each. The lease covered a three-acre tract to be used by defendant as a truck terminal. Defendant paid the monthly rental of $270 up to and including the month of July, 1960, after which it defaulted. For all practical purposes, the premises in question were abandoned by defendant in November, 1960, at which time plaintiff re-entered and took possession of the property.

In December, 1960, plaintiff drilled a producing oil well on the property.

On June 1, 1961, plaintiff entered into a written lease of the premises with another party, the terms of which are mentioned in the trial court's decision hereafter quoted.

On October 2, 1961, plaintiff filed this action to recover the sum of $47,520, such sum being the alleged balance due under the lease with defendant.

Two provisions of that lease, material for our purposes, read:

"FIFTH: If said party of the Second Part shall abandon or vacate said premises, the same shall be relet by party of the First Part for such rent and upon such terms as said First Party may see fit, and if a sufficient sum shall not be thus realized after paying the expenses of such reletting and collecting, to satisfy the rent, hereby reserved, the party of the Second Part agrees to satisfy and pay all deficiencies.

"SIXTH: . . . It is expressly agreed by the parties hereto that if default be made in the payment of the rent above referred to, or in any of the covenants and agreements herein contained to be kept by the party of the Second Part it shall be lawful for the party of the First Part, or its successors or assigns at any time hereafter at the election of said First Party or its successors or assigns without notice to declare said term ended, and to re-enter said lease premises or any part thereof, either with or without process of law, and the said party of the Second Part, or any person or persons occupying the same, to expel, remove and put out, using such force as may be necessary so to do, and that said premises again to repossess and enjoy as before this demise without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenants, and said party of the Second Part further covenants and agrees that said party of the First Part or its successors or assigns shall have at all times the right to distrain for rent due and shall have a valid and first lien upon all property of said party of the Second Part whether exempt by law or not, as security for the payment of rent herein reserved."

Following a trial, judgment was rendered for plaintiff in the amount of $18,562.50. The court's memorandum decision reads:

"In the above entitled matter I am finding that there was an abandonment of the leased premises and that I am granting judgment for the plaintiff against the defendant under the terms of the lease in the amount of $18,562.50. This figure was arrived at in the following manner:

"Under all the evidence it appeared that there were a total of 175 payments remaining on this lease at the rate of $270.00 a month. The last payment made covered the month of July, 1960, and thereafter the premises were vacant until June 1, 1961, at which time the plaintiff leased these premises to Hugh Breeding, Incorporated, at the rate of $150.00 a month for a term of five years. This lease further provides that the lessee shall have an option to release these premises for an additional five years at the rate of $175.00 per month and a further option to release for an additional five years thereafter at the rate of $200.00 a month. The court feels that this is an attempt to mitigate the damages of the plaintiff and in computing the amount of the judgment has allowed 10 months at the rate of $270.00; 60 months at the rate of $120.00, the same being the difference between the agreed rental of the original lease and the rental obtained in the second lease; and further,

the sum of 105 months at the rate of $82.50 a month representing the difference between the amount agreed upon by the defendant to pay and the amount which this court feels that the premises may be leased in the future. A toal of these indicate the amount of the judgment as I have given you previously.

"There was some evidence in regard to the placing of the well upon these premises but the Court finds that this well was drilled thereon after the abandonment by the defendant.

"There was also evidence relating to certain personal property consisting of office furniture and machines which were left on the premises and you are advised that this order does not affect this property as the Court understands the same is being stored thereon."

In due time defendant filed a notice of appeal which, omitting formal parts, reads:

"You, and each of you, are hereby notified that the defendant, Eldon Miller, Inc., appeals to the Supreme Court of the State of Kansas from the judgment of the District Court of Butler County, Kansas, made and entered on the 18th day of April, 1963, giving plaintiff a judgment of $18,562.50 against the defendant, and defendant also appeals from the finding of the Court that there was an abandonment of the leased premises by the defendant and the finding that the oil well drilled upon the leased premises was drilled after the abandonment of said premises by the defendant.

"Said defendant also appeals from the order of the District Court of Butler County, Kansas, made and entered on the 11th day of June, 1963, overruling the motion of the defendant for a new trial of said cause."

In its brief defendant, among other things, contends that the petition was defective in that it failed to state facts sufficient to constitute any cause of action; that its motion for judgment on the pleadings and the opening statement of plaintiff was erroneously overruled; that its demurrer to plaintiff's evidence and its motion for judgment on the pleadings and the evidence were erroneously overruled, and that its objection to the amendment of pleadings was improperly denied.

A short answer to those contentions is that if in fact such rulings were made, no appeal was taken from them and therefore, despite the fact such rulings are specified as error, they are not subject to appellate review. As bearing on this proposition see *Blackburn v. Colvin*, 191 Kan. 239, 241, syl. 1, 380 P. 2d 432, and the cases cited.

Other matters are urged for a reversal of the judgment and which properly are subject to review under the notice of appeal and specifications of error, but in view of our disposition of the case only one point requires discussion.

As previously stated, following the abandonment of the premises by defendant in November, 1960, plaintiff, as of June 1, 1961, secured another tenant, and the rentals he was to receive under this subsequent lease were taken into consideration by the trial court in arriving at the judgment. On this point see *Wilson v. National Refining Co.*, 126 Kan. 139, syl. 5, 266 Pac. 941, and *Lips v. Opp*, 150 Kan. 745, 748, 96 P. 2d 865.

One of defendant's contentions—and which we believe is good—is that the court erred in assessing damages without taking into account the alleged diminished rental value of the premises caused by the drilling of the oil well by plaintiff in December, 1960, which date was prior to the time plaintiff succeeded in leasing the premises to another party.

In this connection it is argued that the location and presence of the oil well on the small tract in question undoubtedly diminished the rental value of the premises, and that the trial court failed to take such fact into consideration. From the memorandum decision of the trial court it appears this matter was regarded as being immaterial because of the fact the well was drilled on the premises after abandonment by defendant. In this respect we believe the trial court was in error and that the judgment should be reversed with directions to take into consideration the diminished rental value—if any—of the premises as a result of the drilling and presence of the oil well thereon.

It is so ordered.

FONTRON, J., concurring: I concur in the majority opinion that the judgment should be reversed and that the trial court should be directed to consider, in awarding damages, the diminished rental value of the premises resulting from the drilling and continued presence of the operating oil well thereon.

However, I would go further in directing the trial court on what should be considered in computing damages, for it is my opinion that the factor of "present value" should be given effect in ascertaining the total amount of the award.

In its determination of the amount due plaintiff for future damages, the trial court computed the total amount of the monthly payments which would become due under the lease during its remaining life of some 105 months, and then deducted from that total the amount which the court felt the premises could be leased for in the

future. The resulting difference was considered as constituting the proper measure of future damages.

What was overlooked, in my judgment, was the fact that plaintiff would be receiving now, in one lump sum, payments which otherwise would be spread out over a period of nearly nine years. Thus, plaintiff would have the beneficial use of the money before it became due.

I would think it universally acknowledged in this day and age that use of money is valuable, and that the present worth of money due in the future is less than that already in hand. The subject is well treated in McCormick on Damages, § 15, pp. 60, 61, where the rule is stated:

". . . Thus, in awarding damages for pecuniary losses to occur in the future, the judge should direct the jury to reduce the amount of the loss to its present worth, since the payment will be made before the loss occurs. . . ."

In § 86, p. 299, of the same work, the rule is stated as applied to loss of future earnings, and it is said:

". . . The full amount of future earnings which are prevented by the injury cannot be awarded, but only their present worth. . . . annuity tables may be used. . . ."

The United States Supreme Court has adhered to this principle and in *Ches. & Ohio Ry. v. Kelly*, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117 (1915), the fourth paragraph of the syllabus reads:

"A given sum of money in hand is worth more than the like sum payable in the future; and where a verdict is based upon the deprivation of future benefits, the ascertained amount of these should ordinarily be discounted so as to make the verdict equivalent to their present value."

A discussion of the method of computing present worth is contained in the above case and discussion and illustrations are also to be found at pp. 304, 305 of McCormick on Damages.

No further elaboration is deemed necessary. It is sufficient to conclude that, in my judgment, the trial court should apply the factor of "present value" in arriving at plaintiff's total damage.