**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

MICHELLE L. NAVIGATO, Trustee
of the Giurbino 2005 Irrevocable
Trust,

        Plaintiff-Appellee,

v.

SJ RESTAURANTS, LLC.; OZARK
RESTAURANTS, INC.;
RESTAURANT SYSTEMS, INC.,

        Defendants-Appellants,

v.

TABLE ROCK RESTAURANTS,
LLC,

        Cross-Claim-Defendant.

No. 11-3108
(D.C. No.: 2:09-CV-02101-DJW)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **HARTZ**, and **HOLMES**, Circuit Judges.

Defendants-Appellants SJ Restaurants, LLC; Ozark Restaurants, Inc.; and

Restaurant Systems, Inc. ("Appellants"), appeal from the final judgment of the

district court entered on March 16, 2011. Plaintiff-Appellee Michelle L.

---

[*]      This Order is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however,
for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1
and Tenth Circuit Rule 32.1.

Navigato, Trustee of the Giurbino 2005 Irrevocable Trust (the "Giurbino Trust"), brought this action against Appellants, as well as Defendant Table Rock Restaurants, LLC,[1] for breach of a commercial lease agreement. The Giurbino Trust, as landlord of the commercial property at issue in this case, sought damages for past and future rent after Table Rock stopped making rental payments before the end of the lease-agreement term. SJ Restaurants, with Ozark Restaurants and also Restaurant Systems as guarantors, was the former tenant under the lease agreement before it was assigned to Table Rock. SJ Restaurants had agreed to remain primarily liable for a portion of the rent Table Rock owed during the remaining term of the lease.

After a bench trial, the district court issued findings of fact and conclusions of law that awarded the Giurbino Trust future damages under Kansas law.[2] We hold that the district court did not err in awarding future damages, nor did it err in its calculation of those damages. Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM** the judgment of the district court.

---

[1] Table Rock has not appealed from the judgment of the district court or otherwise appeared in this appeal.

[2] On October 19, 2009, after the chief district judge denied Appellants' motion to dismiss, the parties consented to proceed before the designated magistrate judge for all proceedings pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Unless otherwise stated, we refer to all orders of the magistrate judge as orders of the "district court."

# I. BACKGROUND

On February 8, 2005, non-party Parsons KFC, LLC ("Parsons KFC") entered into an agreement to lease certain commercial property in Parsons, Kansas, to SJ Restaurants, LLC (the "Lease Agreement") for use as a fast-food restaurant. The Lease Agreement was for an original term of twenty years. As part of its terms, the Lease Agreement included a rental rate of monthly installments of $5,850.00 for the first through fifth years of the lease. The rental rate was then scheduled to increase periodically, culminating in an increase to monthly installments of $7,267.43 during the sixteenth through twentieth lease years.[3] On that same day, Ozark Restaurants, Inc. and Restaurant Systems, Inc. each executed guaranties to Parsons KFC, guarantying SJ Restaurants' obligations under the Lease Agreement. For purposes of this appeal, what is most significant about the Lease Agreement is not what it contains but what it does *not* contain: the Lease Agreement does not contain an "acceleration clause" or other explicit mechanism for the collection of future rent in the event that there would be a breach of the Lease Agreement by the tenant.

Approximately one year later, Parsons KFC assigned all of its interest in

---

[3]      "The Lease Agreement was a triple net lease, meaning that the [t]enant was responsible for (1) all maintenance and repairs and for payment of the cost thereof, (2) payment of all real estate taxes on the subject premises when due, and (3) payment of all fire and extended coverage and liability insurance premiums on the subject premises when due." Aplt. App. at 377 (Dist. Ct. Mem. & Order, filed Jan. 10, 2011).

the Lease Agreement to Plaintiff-Appellee, the Giurbino Trust. It is undisputed in this appeal that the Giurbino Trust succeeded Parson KFC to all rights as the landlord under the Lease Agreement, including the right to receive rental payments. On May 7, 2007, after entering into an asset-purchase agreement with Table Rock, SJ Restaurants assigned all of its interest in the Lease Agreement to Table Rock and Table Rock assumed all duties and obligations as tenant under the Lease Agreement. The Giurbino Trust consented to the assignment on the condition that SJ Restaurants—with Ozark Restaurants and Restaurant Systems as guarantors—remain primarily liable under the Lease Agreement until May 9, 2014, a period of just over seven years from the date of the consent.

Table Rock, which was operating an A&W restaurant in the leased space, did not pay its rent in November and December of 2008. On December 8, 2008, the Giurbino Trust sent Table Rock a notice of default for non-payment of rent. A courtesy copy of the notice of default was sent to each of the Appellants. At some unknown time in late 2008, Table Rock vacated the premises without notice.

In January of 2009, in Kansas state district court, the Giurbino Trust filed suit against Table Rock and SJ Restaurants for breach of the Lease Agreement, and against Ozark Restaurants and Restaurant Systems under the guaranties. Appellants then removed the action to the United States District Court for the District of Kansas. And, once in federal court, Appellants filed cross-claims

against Table Rock for indemnification.[4]  The district court denied Appellants'

motion to dismiss.

On January 10, 2011, after a bench trial and subsequent post-trial briefing,

the district court issued its findings of fact and conclusions of law under Federal

Rule of Civil Procedure 52(a) ("January 10 Order").  In a meticulous and well-

reasoned fifty-three page opinion, the district court held that under Kansas law,

the Giurbino Trust was entitled to various damages, including damages for future

lost net rental income.  The district court's January 10 Order contained two over-

arching conclusions that Appellants now challenge on appeal.

First, the district court held that under Kansas law, the Giurbino Trust was

entitled to future damages as "measured by the amount of rent due under the

Lease Agreement for the entirety of the lease term."  Aplt. App. at 413.  In

reaching its conclusion on this legal question, the district court distinguished the

Kansas Supreme Court's decision in *Gordon v. Consolidated Sun Ray, Inc.*, 352

P.2d 951, 953 (Kan. 1960) (holding that when a lease agreement contains express

provisions requiring separate causes of action for monthly rent deficiencies, a

landlord cannot recover rent until that deficiency arises).  In distinguishing

*Gordon*, the district court concluded that "the lease agreement [in *Gordon*]

specifically provided a separate and independent cause of action each month that

---

[4]     Although the district court's January 10, 2011, memorandum and
order describes Appellants' claims against Table Rock as "counterclaims," these
claims were actually cross-claims.

-5-

there was a deficiency.  Unlike in *Gordon*, the Lease Agreement here contains no such provision."  Aplt. App. at 410.  The district court held that the Kansas Supreme Court's decision in *Wilson v. National Refining Co.*, 266 P. 941 (Kan. 1928), was applicable as it provided that immediately upon breach and abandonment, a landlord could seek "damages . . . for the entirety of the lease term."  Aplt. App. at 411.

Second, based partially on the testimony of the Giurbino Trust's expert, Mr. Jay Hill, the district court's January 10 Order found that the Giurbino Trust's award of future damages (i.e., future lost rental income) should be reduced by $1,000 per month of mitigating rental income.  In making its factual finding on the $1,000 mitigating rental income figure, in addition to Mr. Hill's testimony, the district court considered other supporting evidence in the record and the testimony and opinion of Appellants' own expert—Kenneth Jaggers.

Finally, the district court's January 10 Order held that the Giurbino Trust was entitled to judgment against Appellants and Table Rock, jointly and severally, for past due rent damages of $119,654.00, and future damages of lost net rental income for the period from August 1, 2010, to May 9, 2014.[5]  However, because the district court did not wholly adopt the calculation of damages performed by the Giurbino Trust's expert, Mr. Hill, the district court directed the

---

[5]    The district court further held that the Giurbino Trust is entitled to judgment against only Table Rock for certain other damages, including lost net rental income from May 10, 2014, to February 8, 2025.

-6-

Giurbino Trust to recalculate its figures for future lost net rental income using a discount rate that was *more favorable* to Appellants. Specifically, the recalculation would involve a discount rate of 10.3%.

In its response to the district court's January 10 Order, the Giurbino Trust re-submitted its damages calculations in the form of a supplemental expert witness affidavit. Appellants responded by filing objections to the Giurbino Trust's submission. With these submissions from the parties in hand, on March 16, 2011, the district court filed an order and memorandum that contained its final conclusions (the "March 16 Order"). Specifically, the district court made a slight pro-rated adjustment in the Giurbino Trust's calculations before concluding that the Giurbino Trust was "entitled to judgment against [Appellants], and Table Rock, jointly and severally, for lost net rental income for the period of August 1, 2010 to May 9, 2014 in the amount of $199,461.07." Aplt. App. at 432.[6] A

---

[6] To elaborate on the computations, the Giurbino Trust was ultimately awarded "all scheduled rent payments" from August 1, 2010, to May 9, 2014, minus mitigating rental income of $1,000 per month that might be received by the Giurbino Trust during this period. Aplt. App. at 391 (describing the so-called first scenario); *see id.* at 416 ("The [district] [c]ourt will therefore rely exclusively on Mr. Hill's first scenario."). The net monthly rental amount was then discounted "to reflect the time value of money." *Id.* at 391. Although the parties disputed the appropriate rate, the court selected an *annual* rate of 10.3%. *See id.* at 417. In monetary terms, this resulted in a total lost rental income amount of $289,282.50; the total mitigating rental income amount of $46,000 through May 2014 was subtracted from that figure for a *net* lost rental income amount of $243,282.50; and then the 10.3% discount rate was applied on an annual basis through May 2014, yielding a total discounted net lost rental income of $202,015.97. *See id.* at 168. (Aff. of Jay R. Hill, filed Jan. 26, 2011).

(continued...)

judgment reflecting the damages amounts awarded by the district court was subsequently filed, and this timely appeal followed.

## II. DISCUSSION

Appellants raise two issues on appeal. First, Appellants argue that the district court's award of future rent was inappropriate because under Kansas law, a landlord is not permitted to collect future damages for unpaid rent upon breach of a lease agreement absent an acceleration clause, and the Lease Agreement here contained no such clause. Second, Appellants argue that even if an award of future rent is appropriate under Kansas law, the evidence presented at trial was insufficient to support the amount of future rent awarded.[7] Although we briefly discuss both issues, we rely substantially upon the reasoning of the district court, and we reach the same conclusion.

---

[6](...continued)
Appellants objected to any recovery of discounted net rental income beyond the first nine days of May 2014; the court found this objection to be "well-taken" and thus awarded the Giurbino Trust only $1,045.15 for the period of May 2014. *Id.* 431. As a consequence of this ruling, the total amount of $202,015.97 was reduced by an amount equal to the pro-rated discounted net rental income beyond the first nine days of May, specifically, $2,554.90—resulting in a total damages figure of $199,461.07. *See id.*

[7] The district court held that because it was sitting by virtue of its diversity jurisdiction, the substantive law of Kansas applied. The parties do not contest this ruling on appeal. We also note that the original Lease Agreement provided that Kansas law should apply.

## A. Standard of Review[8]

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1183 (10th Cir. 2009) (quoting *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1260 (10th Cir. 2007)) (internal quotation marks omitted). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Weyerhaeuser*, 510 F.3d at 1262) (internal quotation marks omitted). "In conducting this review, '[w]e view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence.'" *Id.* (alteration in original) (quoting *Weyerhaeuser*, 510 F.3d at 1262).

When reviewing the district court's interpretation of a contract, we proceed under de novo review. *See Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008). "While we review the amount of a damage award for clear error, the methodology a district court uses in calculating a damage award, such as determining the proper elements of the award or the proper scope of recovery, is a question of law we review de novo." *Sw. Stainless, LP*, 582 F.3d at 1183 (quoting *FTC v. Kuykendall*, 371 F.3d 745, 763 (10th Cir. 2004)) (internal

---

[8]      In contrast to the use of Kansas substantive law, our standard of review is a matter of federal law. *See, e.g.*, *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1213 (10th Cir. 2010).

quotation marks omitted).

**B. Lack of an Acceleration Clause in the Lease Agreement**

Appellants' first assertion is that the district court erred in awarding future damages to the Giurbino Trust because the Lease Agreement did not contain an acceleration provision. In support of their argument, Appellants assert that the majority rule is that "[t]he failure to pay rent when it accrues does not accelerate the unpaid rent in the absence of a provision in the lease to that effect." 49 Am. Jur. 2d Landlord and Tenant § 583, at 576 & n.1 (2006) (collecting cases); *see also id.* § 642, at 628 ("In the absence of an acceleration clause, no suit can be brought for future rent."); *see also, e.g., Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 668 (E.D. Pa. 2003) ("If a landlord remains out of possession, however, he may receive a lump sum [of] all rents that will fall due during the unexpired term of his lease, only if the lease in question contains an acceleration clause . . . .").

However, the rules of other jurisdictions are irrelevant where, as here, Kansas blazed its own path many years ago. As the district court held, the Kansas Supreme Court's decision in *Wilson* establishes that a landlord can recover future rent notwithstanding the absence of an acceleration clause in an applicable lease agreement. 266 P. at 942 (holding that, if properly alleged in the complaint, a landlord may "recover damages for breach of contract, even if the damages are measured by the amount of rent due under the lease"); *cf. Ray L. Smith Cos. v.*

*Eldon Miller, Inc.,* 392 P.2d 943, 945 (Kan. 1964) (reversing the trial court's calculation of damages but leaving intact the trial court's award of future damages for breach of a lease agreement).

Appellants counter that the Kansas Supreme Court's more recent decision in *Gordon v. Consolidated Sun Ray, Inc.,* 352 P.2d 951 (Kan. 1960), should control and that it forecloses any cause of action by a landlord for unpaid future rent (absent an acceleration clause) until a deficiency has actually occurred. However, Appellants' reading of *Gordon* is misplaced. As the district court explained, *Gordon* is distinguishable from this action because *Gordon* said nothing about whether a landlord may recover future rent *when a lease is silent* on whether accelerating rent is proper; instead, *Gordon* held that where a lease agreement *specifically provides* for a separate and independent cause of action for each month that there is a deficiency, then the parties' agreement will control and there will be no right to future rent. *See id.* at 953–54; *see also Erickson v. O'Leary*, 273 P. 414, 415 (Kan. 1929) (recognizing that acceleration clauses are valid under Kansas law, but saying nothing about the impact of the absence of such a clause); *IPC Retail Props., LLC v. Oriental Gardens, Inc.*, 86 P.3d 543, 550 (Kan. Ct. App. 2004) (same), *overruled on other grounds by Carrothers Constr. Co., LLC v. City of South Hutchinson*, 207 P.3d 231, 241 (Kan. 2009).

## C. Evidence to Support the District Court's Finding of Future Damages

Appellants' second assertion is that "even if this Court agrees that an award

of future rent is appropriate under [Kansas law], there is insufficient evidence in the record to support the award that the [d]istrict [c]ourt made." Aplts. Opening Br. at 13. More specifically, Appellants argue that the district court's finding that the Giurbino Trust's future lost rental income should be reduced by $1,000 per month of mitigating rental income is "not supported by any credible evidence" because the Giurbino Trust's expert, Mr. Hill, "is not an expert of real estate value" and he "did not perform an appraisal or a valuation of the subject premises." *Id.* at 14. Appellants are simply wrong, as there is ample evidence in the record to support the district court's calculation of damages.

As the district court did, we look to Kansas law for the proper scope of Appellants' recovery of damages. "In order for the evidence to be sufficient to warrant a recovery of damages, there must be some reasonable basis for calculation which will enable the fact finder to arrive at an approximate estimate thereof." *Jetz Serv. Co., Inc. v. Salina Props.*, 865 P.2d 1051, 1057 (Kan. Ct. App. 1993) (quoting *Haag v. Dry Basement, Inc.*, 732 P.2d 392, 396 (Kan. Ct. App. 1987)) (internal quotation marks omitted); *see also Southwind Exploration, LLC v. Street Abstract Co., Inc.*, 209 P.3d 728, 734 (Kan. Ct. App. 2009) ("Damages need not be established with absolute certainty . . . [but] must be supported by evidence that is not conjectural or speculative."). Further, "loss of profits resulting from a breach of contract may be recovered as damages when such profits are proved with reasonable certainty, and when they may reasonably

-12-

be considered to have been within the contemplation of the parties." *Vickers v. Wichita State Univ.*, 518 P.2d 512, 515 (Kan. 1974); *see Source Direct, Inc. v. Mantell*, 870 P.2d 686, 693 (Kan. Ct. App. 1994).

Simply put, there is plenty of competent evidence in the record to support the district court's finding that the future lost rental income should be reduced by $1,000 per month of mitigating rental income, *see Sappington*, 582 F.3d at 1183, and this amount has been proved by the Giurbino Trust with reasonable certainty, *see Vickers*, 518 P.2d at 515. Although we have nothing to add to the district court's thorough analysis in its adoption of the $1,000 per month mitigating rental income figure, we do wish to highlight two points regarding the record, which support the district court's findings.

First, Ronald Keith Maloney, a real-estate appraiser, testified at trial that at that time (July 2010), he was in negotiations with a restaurant, Mi Tierra, to lease the premises for a rate of $738 to $785 per month, triple net, from September 1, 2010, with a rent increase to $1,000 per month, triple net, after August 31, 2011. Mr. Maloney also testified that he recommended to the Giurbino Trust that the reasonable rental value of the property was approximately $700 to $800 per month, triple net. Mr. Maloney's testimony clearly supports the district court's finding of $1,000 in mitigating rental income.

Second, Appellants' expert, Mr. Kenneth Jaggers—a certified real-estate appraiser—offered no competing evidence for the district court to weigh. Even

now, Appellants can point to no evidence in the record that would offer an alternative estimation of mitigating rental income. Without any competing evidence, the district court did not err in relying on the figures that the Giurbino Trust presented *and* that it found to be credible.

Moreover, the district court's finding is not belied by Appellants' argument that "Mr. Hill is an accountant, but is not a certified real estate appraiser" and that "[he] did not perform any kind of valuation of the property." Aplts. Opening Br. at 5–6. This is so for at least two reasons. First, the underlying evidence in the record independently supports Mr. Hill's conclusions. And second, arguing that Mr. Hill was not competent to make expert conclusions on the future rental value of the property is nothing other than a challenge to Mr. Hill's qualifications as an expert under Federal Rule of Evidence 702. Although at trial Appellants did object to Mr. Hill's qualifications to opine as a "real estate valuation expert," this objection was overruled by the district court and, on appeal, Appellants have made no further challenge to the district court's ruling. Thus, Appellants' tacit challenge to Mr. Hill's qualifications is waived. *See Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006) (stating that an issue is waived when it is not raised in the appellate brief).

# III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge